# EXHIBIT A



Audley Law Offices, P.C.
51 Clairton Blvd., Suite 100
Pittsburgh, PA 15236

voice (412) 532-0089
toll free 800-758-9720
fax (412) 532-0096
sean@audleylawoffices.com
www.audleylawoffices.com

May 20, 2019

Golden Rule Insurance Company
7440 Woodland Drive
Indianapolis, IN 46278-1719

*Via Certified and Regular Mail*

Re:     **Estate of Thomas Kopp, et. al. v. Golden Rule Insurance Company
        GD 19-007325, Court of Common Pleas of Allegheny County**

To Whom It May Concern:

Enclosed you will find the following:

1.  A copy of the Complaint filed in the Court of Common Pleas of Allegheny County on
    May 17, 2019;

2.  The original and one copy of the Plaintiffs' First Request for Admissions; and

3.  The original and one copy of the Plaintiffs' First Request for Production of
    Documents.

Thank you for your attention to this matter.

Sincerely,

Sean P. Audley, Esq.

SPA:plg
Enclosures

RECEIVED
MAY 22 2019
Legal Regulatory

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

        Plaintiff,

    v.

GOLDEN RULE INSURANCE COMPANY,

        Defendant.

CIVIL DIVISION

No. **GD 19- 007325**

COMPLAINT IN CIVIL ACTION

Filed on Behalf of Plaintiffs:

Emily Zombek, as Executrix of THE
ESTATE OF THOMAS KOPP,

and

Allegheny General Hospital

Counsel of Record for Plaintiffs:
Sean P. Audley, Esquire
Pa I.D. No.: 57568

Audley Law Offices, P.C.
51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

sean@audleylawoffices.com

RECEIVED
MAY 22 2019
Legal Regulatory

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of          CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL      No. **GD19-007325**

        Plaintiff,

    v.

GOLDEN RULE INSURANCE COMPANY,

        Defendant.

### **NOTICE TO DEFEND**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set for the against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

**IF YOU CANNOT AFFORT TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**LAWYER REFERRAL SERVICE**
The Allegheny County Bar Association
11th Floor, Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania 15219

Telephone: 412-261-5555

2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

        Plaintiff,

    v.

GOLDEN RULE INSURANCE COMPANY,

        Defendant.

CIVIL DIVISION

No. GD 19- 007325

## **COMPLAINT IN CIVIL ACTION**

AND NOW COMES, the Plaintiffs, Emily Zombek, as Executrix of the Estate of Thomas

Kopp, and Allegheny General Hospital, by and through their attorney, Sean P. Audley, Esquire,

and Audley Law Offices, P.C., and files this Complaint, the following of which is a statement

hereof:

## **THE PARTIES**

1.      The Plaintiff, Emily Zombek, is the Executrix for the Estate of Thomas Kopp

("Estate"). Ms. Zombek is a Pennsylvania resident. Thomas Kopp, decedent, was a

Pennsylvania resident at all times relevant to this Complaint.

2.      The Plaintiff, Allegheny General Hospital ("AGH") is a Non-Profit Corporation

organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal

place of business located 320 E. North Avenue, Pittsburgh, Pennsylvania 15212.

3.      The Defendant, Golden Rule Insurance Company ("Golden Rule"), is a health

insurance company having a corporate domicile in Indiana and a home office address of 7440

Woodland Drive, Indianapolis, IN 46278-1719. Golden Rule is a licensed insurance company

3

operating in the Commonwealth of Pennsylvania and regularly conducts business within the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

4.      The averments in paragraphs 1 through 3 above are incorporated herein as though fully set forth.

5.      Thomas Kopp purchased a health insurance policy from Golden Rule with an effective date of October 6, 2017. The policy terminated on January 4, 2018. Despite numerous requests made by the undersigned to Golden Rule, a copy of the policy issued to Thomas Kopp has not been provided.

6.      On May 21, 2017, Thomas Kopp received care through his primary care physician for a severe sore throat and dry cough. No other symptoms were noted. After a thorough medical evaluation, Thomas Kopp was diagnosed with seasonal allergies.

7.      On September 6, 2017, Thomas Kopp received care through his primary care physician to check his blood pressure and refill his Lisinopril. He advised his physician that he still has a slight sore throat and dry non-productive cough. He noted that he was swallowing solid foods better. He again was diagnosed with seasonal allergies. No additional testing was ordered at this appointment.

8.      On October 12, 2017, after the effective date of the Golden Rule health insurance policy, Thomas Kopp received care through his primary care physician and stated that solid foods are getting caught in his throat. After evaluation, a barium swallow test was ordered.

9.      The results of the barium swallow test yielded a mass in the distal esophagus that extended to the gastric cardia. Ultimately, Thomas Kopp was diagnosed with esophageal cancer.

10.     Thomas Kopp received medical care related to this condition from October 19, 2017 (the date of his barium swallow study) through the termination date of the Golden Rule policy at issue.

11.     Unfortunately, Thomas Kopp died on March 29, 2018.

12.     On December 29, 2017, Golden Rule advised Thomas Kopp that they have received claims filed on his behalf, but the claims were under review pending receipt of his medical records.

13.     Thomas Kopp provided Golden Rule with all authorizations necessary to secure his medical records from the providers they had requested.

14.     Thereafter, on February 20, 2018, Golden Rule advised Thomas Kopp that payment for his claims was denied due to the preexisting condition exclusion contained within his policy.  In its denial, Golden Rule stated that Thomas Kopp's policy defined a preexisting condition as follows:[1]

> a condition
>
> (a) For which medical advice, diagnosis, care or treatment was recommended or received within the 24 months immediately preceding the date the covered person became insured under the policy; or
>
> (b) That had manifested itself in such a manner that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care or treatment within the 12 months immediately preceding the date the covered person became insured under the policy.

15.     Golden Rule attached the February 19, 2018 Medical Review Determination Opinion to its February 20, 2018 denial letter.  The Medical Review Determination Opinion concludes that the diagnosis of esophageal/gastric cancer is a preexisting condition and states:

---

[1] It is noted that Golden Rule has not provided a copy of the policy issued to Thomas Kopp, therefore, neither the Plaintiffs nor their counsel are able to confirm this is the language contained in the actual policy issued to Thomas Kopp.

> a clinical progress note from 09/06/17 indicates that the patient has a history
> of hypertension, hyperlipidemia, benign prostatic hyperplasia, and seasonal
> allergies.  It goes on to state that the patient continues to complain of sore
> throat with difficulty swallowing, and a barium swallow test was ordered.
> This encounter from 09/06/17 precedes the effective policy date of 10/06/17.

16.     This statement is false as is evident from a review of Thomas Kopp's medical records insofar as Thomas Kopp ***did not*** have a barium swallow test ordered until October 12, 2017.  Significantly, it was not until October 12, 2017 when Thomas Kopp's physician believed there may be a medical condition present that necessitated further testing.  Most importantly, the 09/06/17 progress note ***does not order any testing***.

17.     Until October 12, 2017, Thomas Kopp was receiving treatment only for high blood pressure and seasonal allergies.

18.     Upon receipt of this determination, Thomas Kopp, and later the Estate, filed internal administrative appeals to Golden Rule's determination.

19.     During these appeals, Golden Rule has, on at least two occasions, been advised of their factual error which would change the outcome of the Medical Review Determination, however, Golden Rule has repeatedly failed to recognize or rectify its glaring error.

20.     At this time, all internal administrative appeals have been exhausted, and litigation remains the only recourse for Plaintiffs.

## COUNT ONE

## EMILY ZOMBEK, as EXECUTRIX OF THE ESTATE OF THOMAS KOPP v. GOLDEN RULE INSURANCE COMPANY

### BREACH OF CONTRACT

21.     Paragraphs 1 through 22 are incorporated herein as if fully set forth.

22.     Thomas Kopp and Golden Rule entered into an agreement wherein Golden Rule would provide health insurance coverage in exchange for payment of a premium.  As stated above, a copy of the policy has not been provided to the Estate despite requests for same.

23.     Thomas Kopp paid any and all premiums required by Golden Rule.

24.     Thomas Kopp obtained medical treatment during the effective dates of the policy issued by Golden Rule and relied upon having this policy when obtaining medical treatment.

25.     Golden Rule failed to tender payment on the medical claims submitted by medical providers on behalf of Thomas Kopp and, therefore, stands in breach of contract.

26.     Golden Rule's failure to tender payment has caused the Estate to suffer damages in the amount of all medical expenses related to that care that remain unpaid, including, but not limited to, $87,871.61 for treatment at Allegheny General Hospital.

WHEREFORE, the Plaintiff, Emily Zombek, as Executrix of the Estate of Thomas Kopp, demand judgment in their favor and against the Defendant, Golden Rule Insurance Company, in an amount that exceeds $35,000, together with interest and costs.

7

## COUNT TWO

## ALLEGHENY GENERAL HOSPITAL v. GOLDEN RULE INSURANCE COMPANY

## BREACH OF CONTRACT

27.     Paragraphs 1 through 28 are incorporated herein as if fully set forth.

28.     Thomas Kopp and Golden Rule entered into an agreement wherein Golden Rule would provide health insurance coverage in exchange for payment of a premium. As stated above, a copy of the policy has not been provided to the Estate despite requests for same.

29.     Thomas Kopp paid any and all premiums required by Golden Rule.

30.     Thomas Kopp obtained medical treatment at Allegheny General Hospital during the effective dates of the policy issued by Golden Rule.

31.     As a condition of his admission to Allegheny General Hospital, Thomas Kopp executed an Assignment of Benefits Form, which conferred upon Allegheny General Hospital all rights to payment for medical services available through the Policy.

32.     Thomas Kopp relied upon having this policy when obtaining medical treatment and Allegheny General Hospital relied upon Golden Rule to tender payment pursuant to the terms of the policy when providing care to Thomas Kopp.

33.     Golden Rule failed to tender payment on the medical claims submitted by Allegheny General Hospital on behalf of Thomas Kopp and, therefore, stands in breach of contract.

34.     As assignee of Thomas Kopp's right to the benefits provided by contract, Allegheny General Hospital was entitled to be paid those benefits that the defendant was obligated by contract to pay.

35.     Golden Rule's failure to tender payment has caused Allegheny General Hospital to suffer damages in the amount of $87,871.61.

WHEREFORE, the Plaintiff, Allegheny General Hospital, demands judgment in its favor and against the Defendant, Golden Rule Insurance Company, in the amount of $87,871.61, together with interest and costs.


## COUNT THREE

### EMILY ZOMBEK, as EXECUTRIX OF THE ESTATE OF THOMAS KOPP v. GOLDEN RULE INSURANCE COMPANY INSURANCE COMPANY

### BAD FAITH INSURANCE PRACTICES ACT, 40 Pa. C.S.A. § 1171.1, *et seq.*

36.     Paragraphs 1 through 37 are incorporated herein as if fully set forth.

37.     Pennsylvania law permits an insured to seek damages from an insurer when the insurer acts in bad faith in the handling of a claim submitted to the insurer. *See*, 42 Pa.C.S.A. §8371.

38.     Golden Rule acted in bad faith in handling this claim insofar as they knowingly made false factual averments in explaining the reasons for the denial.

39.     Golden Rule, despite being advised of the falsity of their statements, continually and wrongfully denied payment for the medical bills incurred by Thomas Kopp, despite being provided proof of the falsity of their statements.

40.     Through these determinations, Golden Rule acted in bad faith and in breach of its fiduciary duty of good faith and fair dealing to Thomas Kopp when it acted in contravention to the Unfair Insurance Practices Act, 40 P.S. §1171.1, *et seq.*, by refusing to pay Thomas Kopp's

medical providers for the care they provided without conducting a reasonable investigation based upon all available information in violation of 40 P.S. §1171.5(a) (10) (iv).

41.     Golden Rule acted in bad faith and breach of its fiduciary duty of good faith and fair dealing to Thomas Kopp when it acted in contravention to the Unfair Insurance Practices Act, 40 P.S. §1171.1, *et seq.*, by not attempting in good faith to effectuate prompt, fair, and equitable settlements of the medical claims submitted by Thomas Kopp's medical providers, once Golden Rule's liability to pay Thomas Kopp's medical claims became reasonably clear in violation of 40 P.S. §1171.5(a)(10)(vi).

42.     Golden Rule acted in bad faith and breached its fiduciary duty of good faith and fair dealing to Thomas Kopp when it acted in contravention to the Unfair Insurance Practices Act, 40 P.S. §1171.1, *et seq.*, when it compelled the Estate of Thomas Kopp to institute litigation to recover payment for medical claims due under Thomas Kopp's health insurance policy in violation of 40 P.S. §1171.5(a) (10) (vii).

43.     Pursuant to 42 Pa.C.S.A. §8371, when an insurer is found to have acted in bad faith toward an insured, damages can include the following:

a.     Interest on the amount of the claim from the date the claim was made by the insured in an amount equal to prime rate of interest plus 3%;

b.     Punitive damages; and

c.     Court costs and attorney fees.

44.     Golden Rule's bad faith and wrongful denial of Thomas Kopp's medical claims caused actual damages including, but not limited to, $87,871.61 for treatment at Allegheny General Hospital.

WHEREFORE, Plaintiff, Emily Zombek, as Executrix of the Estate of Thomas Kopp demands judgment in its favor and against the Defendant, Golden Rule Insurance Company, in the amount in excess of $35,000, together with interest, punitive damages, costs, and attorney fees.

## COUNT FOUR

## EMILY ZOMBEK, as EXECUTRIX OF THE ESTATE OF THOMAS KOPP v. GOLDEN RULE INSURANCE COMPANY

## VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

45.     Paragraphs 1 through 46 are incorporated herein as if fully set forth.

46.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), codified at 73 P.S. §201-1, *et. seq.*, was designed to protect consumers from not only unfair, but also deceptive, business practices. 73 P.S. §201-2(4). *See also, DeArmitt v. New York Life Insurance Company*, 73 A.3d 578 (Pa. Super. 2013) ("The purpose of the UPTCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection.").

47.     Prohibited actions include "representing that goods or services have...characteristics...[or] benefits that they do not have." 73 P.S. §201-2(4)(v).

48.     Further, the UTPCPL finds as unlawful a business "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi).

49.     To effectuate the legislative intent, Pennsylvania courts have recognized that the UTPCPL should be liberally construed. *DeArmitt v. New York Life Insurance Company*, 73 A.3d at 591.

50.     Golden Rule represented to Thomas Kopp that the policy he purchased would provide him with coverage for medical services he received after the effective date of the policy.

51.     In reliance on this representation, Thomas Kopp purchased the policy and, thereafter, obtained medical services.

52.     At the time Thomas Kopp purchased the policy, he believed he had blood pressure issues and seasonal allergies. In fact, his primary care physician also thought Thomas Kopp had blood pressure issues and seasonal allergies.

53.     On October 12, 2017, six (6) days after the effective date of the Golden Rule policy, Thomas Kopp went to his primary care physician to a routine blood pressure check, and advised his physician that food had started to get stuck in his throat. At this point, Thomas Kopp was ordered to have a barium swallow test.

54.     Following the barium swallow test, Thomas Kopp was diagnosed with esophageal cancer and began to receive cancer treatment.

55.     All claims for medical services related to his esophageal cancer treatment were timely submitted to Golden Rule.

56.     In February 2018, Golden Rule denied payment for these medical services on the basis that his physician ordered a barium swallow test on **September 6, 2017**, which predates the policy. This is a factual inaccuracy that could have been easily corrected.

57.     It is clear from a review of the medical records that Thomas Kopp was unaware that he had esophageal cancer on October 6, 2017. The symptoms Thomas Kopp was

experiencing were thought to be seasonal allergies by both Thomas Kopp and his primary care physician.

58.     Golden Rule's denial of payment for medical services constitutes a violation of the UTPCPL insofar as Golden Rule represented that Thomas Kopp would have coverage for medical services incurred after the effective date of the policy and Golden Rule failed to provide said coverage.

59.     To the extent that Golden Rule advised Thomas Kopp that the policy excluded pre-existing conditions, they failed to advise Thomas Kopp that he could be denied coverage for conditions he did not know that he had at the time the policy was issued.

60.     Further, the conduct of Golden Rule, by denying Thomas Kopp's claim for medical services based upon a clear factual error and, further, failing to correct their factual error, constitutes a violation of the UTPCPL.

61.     The UTPCPL created a private cause of action and states as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred ($100) dollars, whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary and proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees

73 P.S. §201-9.2 (emphasis added).

62.     Golden Rule's failure to pay the claims for medical services rendered, which is in violation of the UTPCPL, has caused Thomas Kopp, by and through his Estate, to suffer actual damages including, but not limited to, $87,871.61 for treatment at Allegheny General Hospital.

13

WHEREFORE, Plaintiff, Emily Zombek, as Executrix of the Estate of Thomas Kopp demands judgment in its favor and against the Defendant, Golden Rule Insurance Company, in the amount of three times the actual damages, which includes, but is not limited to, $87,871.61, together with interest, costs, and attorney fees.

RESPECTFULLY SUBMITTED:

AUDLEY LAW OFFICES, P.C.

By:                

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

14

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  Claimant

Signature:

Name:  Sean P. Audley

Attorney No.:  57568

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

CIVIL DIVISION

No.

       Plaintiff,

   v.

GOLDEN RULE INSURANCE COMPANY,

       Defendant.

## **VERIFICATION**

The undersigned, Emily Zombek, as Executrix for The Estate of Thomas Kopp, verifies that the facts set forth in the forgoing Complaint in Civil Action are true and correct to the best of her knowledge, information, and belief. She is authorized, as the Executrix of The Estate of Thomas Kopp, to make this verification on behalf of the Plaintiff. She understands that this Verification is made subject to the penalties for unsworn falsification to authorities provided for in 18 Pa. C.S.A. § 4904.

Date: 5-15-19

Emily Zombek
Executrix for the Estate of Thomas Kopp

16

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of          CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL            No.

     Plaintiff,

  v.

GOLDEN RULE INSURANCE COMPANY,

     Defendant.

## **VERIFICATION**

The undersigned, Thomas Zdrale, verifies that the facts set forth in the forgoing

Complaint in Civil Action are true and correct to the best of his knowledge, information, and

belief. He is authorized as the Director of Finance of the Allegheny Health Network – the

Western Pennsylvania Hospital, to make this verification on behalf of the Plaintiff. He

understands that this Verification is made subject to the penalties for unsworn falsification to

authorities provided for in 18 Pa. C.S.A. § 4904.

Date:  S-16-20A

                            Thomas Zdrale
                            Director of Finance
                            Allegheny Health Network

15

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

      Plaintiff,

   v.

GOLDEN RULE INSURANCE COMPANY,

      Defendant.

CIVIL DIVISION

No.  GD 19-007325

REQUESTS FOR ADMISSION

Filed on Behalf of Plaintiffs:

Emily Zombek, as Executrix of THE
ESTATE OF THOMAS KOPP,

and

Allegheny General Hospital

Counsel of Record for Plaintiffs:
Sean P. Audley, Esquire
Pa I.D. No.: 57568

Audley Law Offices, P.C.
51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

sean@audleylawoffices.com



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of                  CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL                    No. GD 19-007325

      Plaintiff,

  v.

GOLDEN RULE INSURANCE COMPANY,

      Defendant.


## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT, GOLDEN RULE INSURANCE COMPANY

### INSTRUCTIONS

If Golden Rule Insurance Company, Inc. (hereafter Defendant) fails to respond or object to any request within 30 days of the service of the Requests, the matter shall be deemed admitted pursuant to Pa. R. Civ. P. 4014 (B).

As is more fully set out in Rule 4014, the Defendant must admit or deny each request, and, where necessary, specify the parts of each request to which it objects or cannot in good faith admit or deny. If the Defendant objects to only part of a Request, it must admit or deny the remainder of the Request. In the event that the Defendant objects to or denies any Request or portion of a Request, the Defendant must state the reasons for its objection or denial.

Each Request solicits all information obtainable by Defendant from Defendant's attorneys, investigators, agents, employees and representatives. If you answer a Request on the

2

basis that you lack sufficient information to respond, describe any and all efforts you made to inform yourself of the facts and circumstances necessary to answer or respond.

DEFINITIONS

1.      The word "or" is used herein in its inclusive sense unless the context clearly requires otherwise.

2.      The term "document" means and includes without limitation all correspondence, memoranda, certificates, notes, books, manuals, pamphlets, brochures, advertisements, books of account, balance sheets, financial statements, profit and loss statements, working papers, schedules, diaries, calendars, logs, time records, equipment records, microfilms, transcripts, recordings, tapes, telexes, telegrams, files, proposals, bids, offers, contracts, agreements, change orders, worksheets, drawings, blue prints, designs, specifications, time cards, compilations, graphs, charts, bills, statements, invoices, receipts, bills of lading, shipping records, confirmations, applications, purchase orders, checks, checkbooks and other checking records, photographs, formulae, prescriptions, studies, projections, reports, computer programs, information contained in computer banks, tapes, cards, printouts and drafts to the extent they differ from the originals, and all other records and papers of any nature whatsoever.

3.      Any reference to a specifically named person, corporation or other entity and any reference generally to "person" shall include the employees, agents, representatives and other persons acting on behalf thereof or through whom the referenced person acts. The term "person" means and includes natural persons, corporations, partnerships, joint ventures, sole proprietorships, associations, trusts, estates, firms and any other entity.

4.      As used herein, "Defendant", shall be deemed to include Golden Rule Insurance Company, as well as their agents, attorneys, representatives or any other person acting on their

3

behalf or on behalf of any one of them.

    5.      As used herein, "you" refers to the Defendant, Golden Rule Insurance Company.

REQUEST FOR ADMISSION NO. 1.

    Defendant issued a health insurance policy, numbered 094472834 and with an effective date of October 6, 2017 to Thomas Kopp, DOB 02/16/1953.

Admit_____        Deny_____

REQUEST FOR ADMISSION NO. 2.

    Policy number 094472834 was effective between October 6, 2017 and January 4, 2018.

Admit_____        Deny_____

REQUEST FOR ADMISSION NO. 3.

    Defendant received claims seeking payment from Defendant for medical care provided to Thomas Kopp between November 30, 2017 and December 29, 2017 at Allegheny General Hospital.

Admit_____        Deny_____

REQUEST FOR ADMISSION NO. 4.

Defendant received claims seeking payment from Defendant for medical care provided between October 12, 2017 and January 4, 2018 from medical providers other than Allegheny General Hospital.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 5

Defendant mailed a letter dated February 20, 2018 to Mr. Kopp's home address which explained that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 6

Exhibit 1 attached hereto is a true and correct copy of the letter dated February 20, 2018 Defendant mailed to Mr. Kopp's home address advising that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 7

Exhibit 2 attached hereto is a true and correct copy of the medical report dated February 19, 2018 that defendant enclosed with its February 20, 2018 letter advising Mr. Kopp that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy?

Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 8

Exhibit 3 attached hereto is a true and correct copy of the letter dated February 26, 2018 Defendant mailed to Mr. Kopp's home address advising of a typographical error in the medical report provided to Mr. Kopp with the February 20, 2018 letter.

Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 9.

Exhibit 4 attached hereto is a true and correct copy of the medical report dated February 26, 2018 Defendant mailed to Mr. Kopp's home address with the February 26, 2018 letter advising him of the typographical error in the February 19, 2018 medical report.

Admit_____                    Deny_____

6

REQUEST FOR ADMISSION NO. 10.

Both medical reports referenced above, marked as exhibits 2 and 4, state, at page 3, the

following:

> "Based on the provided documentation, with a reasonable degree of medical
> certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension,
> allergies and benign hyperplasia are pre-existing conditions, but the diagnosis of
> cardiac arrythmia is not a pre-existing condition. Based on the medical advice,
> care and treatment rendered in the 24 months preceding the effective date of the
> policy.  A clinical progress note from 09/06/17 indicates that the patient has a
> history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and
> seasonal allergies.  It goes on to state that that the patient continues to complain of
> sore throat with difficulty swallowing, and a barium swallow test was ordered.
> This encounter from 09/06/17 precedes the effective policy date of 10/06/17."

Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 10.

Exhibit 5 attached hereto is the progress note dated September 6, 2017 that is referenced

in the medical reports marked exhibits 2 and 4.

Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 11.

The progress note dated September 6, 2017 that is marked exhibit 5 does not state that a barium swallow test was ordered.


Admit_____          Deny_____


REQUEST FOR ADMISSION NO. 12.

The progress note dated September 6, 2017 that is marked exhibit 5 does not diagnose Mr. Kopp as suffering from dysphagia.


Admit_____          Deny_____


REQUEST FOR ADMISSION NO. 13.

Mr. Kopp was not diagnosed with dysphagia until October 12, 2017?


Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 14.

A barium swallow test was not ordered by any medical provider until October 12, 2017.


Admit_____                    Deny_____




REQUEST FOR ADMISSION NO. 15.

The diagnosis of dysphagia did not occur until after the effective date of the health insurance policy referenced above.


Admit_____                    Deny_____




REQUEST FOR ADMISSION NO. 16.

The barium swallow test was not ordered until after the effective date of the health insurance policy referenced above.


Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 17.

The medical reviewer was factually incorrect when he or she wrote in the February 19 and February 26, 2018 report that a barium swallow test was ordered on September 6, 2017.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 18.

Mr. Kopp was not diagnosed with esophageal cancer until November 16, 2017.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 19.

In a letter dated December 20, 2018, a copy of which is attached hereto and marked exhibit 6, Defendant was advised of the erroneous factual averment in the medical reviewer's report regarding the date that the barium swallow test was ordered.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 20.

After Defendant was advised that the medical review reports contained the factual error regarding the date that the barium swallow test was ordered, Defendant did not seek another review of the medical record to determine if the esophageal cancer was a pre-existing condition.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 21.

After Defendant was advised that the medical review reports contained the factual error regarding the date that the barium swallow test was ordered, Defendant continued to maintain that the claim was barred by the pre-existing condition clause?

Admit_____          Deny.

RESPECTFULLY SUBMITTED:

AUDLEY LAW OFFICES, P.C.

By: _____
Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

11

**GoldenRule®**
A UnitedHealthcare Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

February 20, 2018

TOM KOPP
2345 KINGWOOD ST
PITTSBURGH, PA  15234-3147

Identification No.:  094472834
Insured:  Tom Kopp
Claimant:  Tom Kopp

Dear Mr. Kopp:

We have completed our review of your claims.

The effective date of your insurance is October 6, 2017.  Your plan terminated on
January 4, 2018.  Preexisting conditions are not covered under your policy.

Your certificate defines a preexisting condition as a condition:

> (a)  For which medical advice, diagnosis, care or treatment
>       was recommended or received within the 24 months
>       immediately preceding the date the covered person
>       became insured under the policy; or
>
> (b)  That had manifested itself in such a manner that would
>       have caused an ordinarily prudent person to seek medical
>       advice, diagnosis, care or treatment within the 12 months
>       immediately preceding the date the covered person became
>       insured under the policy.

We received medical records from St. Clair Hospital, Dormont Vision Center and
Mailey Thoracic Surgery.

We sent the medical records we received along with a copy of your plan definition to a
medical professional for review.  We asked the medical professional if the treatment
you received was due to a preexisting condition as defined by your plan.

The medical professional's opinion is that the treatment you received for the conditions
listed in the enclosed chart is due to preexisting conditions as defined by your plan.
Therefore, no benefits would be payable for these conditions or any related conditions.

Exhibit  1

Tom Kopp
Identification No.:  094472834
Page 2
February 20, 2018

The medical professional's opinion is that some of these conditions are due to the same or related causes and are therefore deemed to be one illness.

We have enclosed a copy of the medical professional's opinion for your review.

If you wish to appeal this decision, please submit your request to:

Grievance Administrator
PO Box 31371
Salt Lake City, UT  84131-0371

We have enclosed a copy of the Standard Grievance and Adverse Determination Procedures for your review.

We expressly reserve all of our contractual rights under the contract of insurance.

Sincerely,

*Kylynn Williams*
Kylynn Williams, Specialist
Medical History Review

Enclosure

February 19, 2018

KYLYNN L WILLIAMS
UNITED HEALTHCARE (MEDICAL REVIEWS)
GREEN BAY, WI 54307

CLAIMANT: KOPP, TOM
EMPLOYEE: KOPP, TOM
POLICY: 094472834
CLIENT TRACKING NUMBER:

**Records Received:**
Consulting physician's opinion 02/13/18
Plan language
Fax cover sheet
St Clair Hospital medical records 10/19/17-01/09/18
Dormont Vision Center medical records 04/15/16-04/15/16
Mailey Thoracic Surgery medical records 05/21/17-12/05/17
Additional records request letter 12/29/17

**Summary of Treatment/Case History:**
This is a 65-year-old male (date of birth 02/16/53) for whom the effective date of the policy is 10/06/17.

A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, seasonal allergies, and continues to complain of a sore throat with difficulty swallowing. A barium swallow test was ordered and performed on 10/19/17. The report from the swallow study indicates the patient was found to have a malignant mass of the distal esophagus extending to the gastric cardia.

A radiology report of a CT scan of the chest/abdomen/pelvis with oral and non-ionic intravenous contrast performed on 10/25/17 indicates a distal esophageal mass extending into the stomach with malignant appearing distal pair of esophageal adenopathy and adenopathy along the lesser curvature of the stomach.

A thoracic surgery clinical note from 11/02/17 states that the patient has had difficulty swallowing solids and feels that food is getting stuck, causing him to cough in addition to having a sore throat since June. The patient believed that the sore throat was initially related to his allergies. It is noted that the swallow study and CT scan of the chest/abdomen/pelvis were ordered by the primary care physician. A PET scan and an endoscopy were recommended.

A radiology report from a PET/CT of the skull base to the mid-thigh performed on 11/08/17 indicates a tumor in the distal esophagus consistent with malignancy, which is contiguous with a mass at the gastroesophageal junction that extends well into the stomach, and a large metastatic lymph node or conglomerate chain of lymph nodes in the distal aspect of the posterior mediastinum.

An operative report from 11/16/17 indicates that a flexible esophagogastroduodenoscopy with biopsy was performed, which revealed poorly differentiated adenocarcinoma.

A clinical progress note from 11/17/17 indicates that treatment with chemotherapy and radiation is recommended. A port was placed on 11/21/17 for the

Exhibit 2

chemotherapy.

An emergency room clinical note from 12/29/17 indicates that the patient presented with tachycardia with evidence of occasional atrial flutter on monitoring. This was treated with IV Cardizem, which brought the patient back into normal sinus rhythm, and outpatient follow-up was recommended. The patient returned to the emergency room with tachycardia on 01/02/18, and per the clinical note, was found to have supraventricular tachycardia (SVT) on electrocardiogram (EKG). The SVT was successfully converted back to normal sinus rhythm with adenosine. He was also found to be anemic during this encounter, which was attributed to chemotherapy.

**Questions for Review:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

**Conclusion:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

Based on the submitted policy definitions, the diagnoses have been divided into the following illnesses:

Esophageal/gastric Cancer

C15.5 Malignant neoplasm of lower third of esophagus 11/27/17, 11/30/17-12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17

C15.8 Malignant neoplasm of overlapping sites of esophagus 11/08/17

C15.9 Malignant neoplasm of esophagus, unspecified 11/24/17-12/18/17, 11/30/17, 12/05/17, 12/14/17, 2/26/17-12/29/17, 12/29/17

C16.0 Malignant neoplasm of cardia 11/16/17, 11/21/17

C16.9 Malignant neoplasm of stomach, unspecified 11/02/17, 11/17/17

K22.8 Other specified diseases of esophagus 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17

K22.9 Disease of esophagus, unspecified 11/16/17

T45.1X5A Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter 12/26/17-12/29/17

R11.0 Nausea 11/24/17-12/18/17

R11.2 Nausea with vomiting, unspecified 12/26/17-12/29/17

R12 Heartburn 11/30/17

R13.10 Dysphagia, unspecified 09/06/17, 10/12/17, 10/19/17, 10/24/17

D50.0 Iron deficiency anemia secondary to blood loss (chronic) 11/24/17-12/18/17, 11/30/17, 12/14/17

D50.9 Iron deficiency anemia, unspecified 09/06/17, 10/12/17, 11/01/17, 11/09/17

D64.9 Anemia, unspecified 11/01/17

Z51.0 Encounter for antineoplastic radiation therapy 11/30/17-12/29/17

Z51.11 Encounter for antineoplastic chemotherapy 11/24/17-12/18/17, 12/26/17-12/29/17

T82.868A Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter 12/26/17-12/29/17

Y82.8 Other medical devices associated with adverse incidents 12/26/17-12/29/17

Z45.2 Encounter for adjustment and management of vascular access device 11/21/17

Dyslipidemia

E78.5 Hyperlipidemia, unspecified 09/06/17, 10/12/17, 11/16/17

Hypertension

I10 Essential (primary) hypertension 01/02/18, 01/07/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17

Cardiac arrhythmia

I47.1 Supraventricular tachycardia 01/02/18, 01/07/18

I48.92 Unspecified atrial flutter 12/29/17

I49.9 Cardiac arrhythmia, unspecified 01/02/18

R00.0 Tachycardia, unspecified 01/02/18, 01/07/18, 12/26/17-12/29/17, 12/29/17

R07.9 Chest pain, unspecified 01/02/18, 12/29/17

Allergies

J30.2 Other seasonal allergic rhinitis 09/06/17, 10/12/17

L24.7 Irritant contact dermatitis due to plants, except food 09/06/17, 10/12/17, 11/01/17, 11/09/17

Benign prostatic hyperplasia

N40.0 Enlarged prostate without lower urinary tract symptoms 09/06/17, 10/12/17

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:

Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17

Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17

Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:

Esophageal/gastric Cancer

Dyslipidemia

Hypertension

Allergies

Benign prostatic hyperplasia

Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:

Cardiac arrhythmia

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:

Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17

Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17

Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

No. Not all of the above diagnoses are due to the same or related causes and therefore deemed to be one illness.

Based on the provided documentation, with a reasonable degree of medical certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension, allergies and benign prostatic hyperplasia are pre-existing conditions, but the diagnosis of cardiac arrhythmia is not a pre-existing condition based on the medical advice, care, and treatment rendered in the 24 months preceding the effective date of the policy. A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and seasonal allergies. It goes on to state that the patient continues to complain of sore throat with difficulty swallowing, and a barium swallow test was ordered. This encounter from 09/06/17 precedes the effective policy date of 10/06/17.

**References Used in Support of Decision:**

Merck manual:

Esophageal cancer

http://www.merckmanuals.com/professional/gastrointestinal-disorders/tumors-of-the-gi-tract/esophageal-cancer

**List of Conditions**

ID#: 094472834
Claimant: TOM KOPP

Diagnosis/Condition(s):

| Code | Description | Date(s) of Service |
|---|---|---|
| C15.5 | Malignant neoplasm of lower third of esophagus | 01/03/18–01/16/18, 11/27/17, 11/30/17–12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17 |
| C15.8 | Malignant neoplasm of overlapping sites of esophagus | 11/08/17 |
| C15.9 | Malignant neoplasm of esophagus, unspecified | 02/06/18, 11/24/17–12/18/17, 11/30/17, 12/05/17, 12/14/17, 12/26/17–12/29/17, 12/29/17 |
| C16.0 | Malignant neoplasm of cardia | 11/16/17, 11/21/17 |
| C16.9 | Malignant neoplasm of stomach, unspecified | 11/02/17, 11/17/17 |
| D50.0 | Iron deficiency anemia secondary to blood loss (chronic) | 11/24/17–12/18/17, 11/30/17, 12/14/17 |
| D50.9 | Iron deficiency anemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| D64.9 | Anemia, unspecified | 11/01/17 |
| E78.5 | Hyperlipidemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17, 11/16/17 |
| I10 | Essential (primary) hypertension | 01/02/18, 01/07/18, 02/06/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17 |
| I47.1 | Supraventricular tachycardia | 01/02/18, 01/07/18, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| I48.92 | Unspecified atrial flutter | 12/29/17 |
| I49.9 | Cardiac arrhythmia, unspecified | 01/02/18 |
| J30.2 | Other seasonal allergic rhinitis | 09/06/17, 10/12/17 |
| K22.8 | Other specified diseases of esophagus | 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17 |
| K22.9 | Disease of esophagus, unspecified | 11/16/17 |
| L24.7 | Irritant contact dermatitis due to plants, except food | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| N40.0 | Enlarged prostate without lower urinary tract symptoms | 09/06/17, 10/12/17 |
| R00.0 | Tachycardia, unspecified | 01/02/18, 01/07/18, 12/26/17–12/29/17, 12/29/17 |
| R07.9 | Chest pain, unspecified | 01/02/18, 12/29/17 |
| R11.0 | Nausea | 11/24/17–12/18/17 |
| R11.2 | Nausea with vomiting, unspecified | 12/26/17–12/29/17 |
| R12 | Heartburn | 11/30/17 |
| R13.10 | Dysphagia, unspecified | 02/06/18, 09/06/17, 10/12/17, 10/19/17, 10/24/17, 11/01/17, 11/09/17 |
| T45.1X5A | Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter | 12/26/17–12/29/17 |
| T82.868A | Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter | 12/26/17–12/29/17 |
| Y82.8 | Other medical devices associated with adverse incidents | 12/26/17–12/29/17 |
| Z45.2 | Encounter for adjustment and management of vascular access device | 11/21/17 |
| Z51.0 | Encounter for antineoplastic radiation therapy | 01/03/18–01/16/18, 11/30/17–12/29/17 |
| Z51.11 | Encounter for antineoplastic chemotherapy | 11/24/17–12/18/17, 12/26/17–12/29/17 |

Merck manual:

Dyslipidemia

http://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/lipid-disorders/dyslipidemia

Merck manual:

overview of hypertension

http://www.merckmanuals.com/professional/cardiovascular-disorders/hypertension/overview-of-hypertension

Merck Manual

Seasonal Allergies

http://www.merckmanuals.com/professional/immunology-allergic-disorders/allergic,-autoimmune,-and-other-hypersensitivity-disorders/allergic-rhinitis

Merck manual:

Benign prostatic hyperplasia

http://www.merckmanuals.com/professional/genitourinary-disorders/benign-prostate-disease/benign-prostatic-hyperplasia-bph

Merck Manual

Cardiac Arrhythmia

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/overview-of-arrhythmias

Merck manual:

Atrial flutter

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/atrial-flutter

Merck Manual

Reentrant supraventricular tachycardias SVT

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/reentrant-supraventricular-tachycardias-svt

---

**Reviewer Code:** 5158

The physician that provided this review is board certified by the American Board of Internal Medicine in General Internal Medicine. This reviewer is a member of the American College of Physicians and a member of the Society of Hospital Medicine. This reviewer has been in active practice since 2003.

**Conflict of Interest Statement:**

This reviewer hereby certifies that he/she:

- Declares, under penalty of perjury, that the information contained in this report and its attachments, if any, is true and correct to the best of his/her knowledge and belief, except as to information that he/she has indicated was received from others. As to that information, this report accurately describes the information provided to him/her.
- Does not accept compensation for review activities that is dependent in any way on the specific outcome of the case;
- To the best of his/her knowledge, was not involved with the specific episode of care prior to referral of the case for review;
- To the best of his/her knowledge, has not had any prior involvement in the denial/appeal process for the case, regardless of whether the involvement was on behalf of ▇▇▇▇ or any other peer review vendor;
- Has the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review; and
- Has current, relevant experience and/or knowledge to render a determination for the case under the review;
- Does not have a material, familial, or financial conflict of interest regarding the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care

service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure, or other therapy being recommended for the covered person whose treatment is the subject of the review;

- Was located in a state or territory of the United States when conducting this review

The written opinions conveyed herein represent the opinions of the physician reviewers and clinical advisors who reviewed the case. These case review opinions are provided pursuant to the recipient's request and in good faith, based on the medical records and information submitted to such reviewers for review, the published scientific medical literature, and other relevant information such as that available through federal agencies, institutes and professional associations. ██████████████████████████ assumes no liability for the opinions of its contracted physicians and/or clinician advisors unless ██████ has expressly accepted the risk of any such liability through a written contract with the health plan, organization or other party authorizing this case review. The health plan, organization or other party has requested and authorized this case review and ██████ and its contracted physicians and/or clinician advisors have provided this case review pursuant to that request and authorization. The health plan, organization or other party authorizing this case review agrees to hold ██████ harmless for any and all claims which may arise as a result of this case review. Unless otherwise expressly agreed in writing, the health plan, organization or other third party requesting or authorizing this review is responsible for policy interpretation, the final determination made regarding coverage, actual provision of coverage where applicable and/or eligibility for this case, and providing written notice of its determination to the patient/enrollee or their authorized representative and/or their treating provider, which shall include any information required by state and/or federal regulations.

3192473.3
Case Analyst: Basil ext 6529

## STANDARD GRIEVANCE AND ADVERSE DETERMINATION PROCEDURES

The following procedures apply to any appeal of an adverse determination, or grievance, including requests regarding rescission action that you or your dependent may submit, unless the state in which you reside has state-specific grievance or appeal procedure requirements that are applicable. We reserve the right to revise or amend these procedures. The purpose of these procedures is to provide a way to settle disputes you may have with us concerning adverse determinations or grievances.

**DEFINITIONS:**

**"Adverse determination"** means a recommendation by our Review Agent or a determination by us that a service or treatment is not medical necessary (as defined in your policy or certificate).

**"Grievance"** means any written complaint regarding a full or partial denial of a claim for benefits except for denials on the basis that the:

- A. Claim is a duplicate billing;
- B. Claim needs to be sent to the network for repricing; or
- C. Medicare Explanation of Benefits is needed in order to process the claim.

**A grievance includes complaints regarding rescission action. A grievance does not include an adverse determination.**

## REVIEWS REGARDING ADVERSE RECOMMENDATION MADE BY OUR REVIEW AGENT:

- A. A first-level review will be conducted by the Review Agent, but by a different medical practitioner. If your or your dependent's medical condition requires an expedited decision, the Review Agent will expedite the review.
- B. If the results of the review remain unsatisfactory to you, the Review Agent will select a different independent medical practitioner, who practices in a field of medicine appropriate to the adverse determination, to conduct a second-level review.

## REVIEWS REGARDING ADVERSE DETERMINATIONS MADE BY US:

- A. A first-level review will be conducted by an independent medical practitioner chosen by us.
- B. If the results of the above review remain unsatisfactory to you, we will select a different independent medical practitioner who practices in a field of medicine appropriate to the adverse determination, to conduct a second-level review.

## REVIEWS REGARDING A GRIEVANCE:

- A. A first-level grievance will be handled by the original reviewer or a designated representative of the area responsible for the grievance. For cases involving a rescission decision, a panel of individuals who were not involved in the original decision will review the grievance. Grievances involving a rescission decision will have one level of review.
- B. A second-level grievance will be handled by a person not involved in the original denial or first-level grievance.

**Golden Rule®**
A UnitedHealthcare Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

February 26, 2018

TOM KOPP
2345 KINGWOOD ST
PITTSBURGH, PA  15234-3147

Identification No.:  094472834
Insured:  Tom Kopp
Claimant:  Tom Kopp

Dear Mr. Kopp:

We sent you a letter dated February 20, 2018 regarding our preexisting conditions determination.  This letter included a copy of the medical consultant opinion along with a chart that listed the conditions that were determined to be preexisting.

Upon further review, we have determined that there was a typographical error on the enclosed medical consultant opinion and the chart. The opinion indicated that the condition of cardiac arrhythmia and other associated conditions were preexisting in error.

We have enclosed a copy of the corrected medical consultant opinion along with an updated chart listing the conditions determined to be preexisting as defined by your plan.

We apologize for any inconvenience this may have caused.

Sincerely,

*Kylynn Williams*
Kylynn Williams, Specialist
Medical History Review

Enclosure

Exhibit 3

February 26, 2018

KYLYNN L WILLIAMS
UNITED HEALTHCARE (MEDICAL REVIEWS)
GREEN BAY, WI 54307

CLAIMANT: KOPP, TOM
EMPLOYEE: KOPP, TOM
POLICY: 094472834
CLIENT TRACKING NUMBER:

**Records Received:**
Consulting physician's opinion 02/13/18
Plan language
Fax cover sheet
St Clair Hospital medical records 10/19/17-01/09/18
Dormont Vision Center medical records 04/15/16-04/15/16
Mailey Thoracic Surgery medical records 05/21/17-12/05/17
Additional records request letter 12/29/17

**Summary of Treatment/Case History:**
This is a 65-year-old male (date of birth 02/16/53) for whom the effective date of the policy is 10/06/17.

A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, seasonal allergies, and continues to complain of a sore throat with difficulty swallowing. A barium swallow test was ordered and performed on 10/19/17. The report from the swallow study indicates the patient was found to have a malignant mass of the distal esophagus extending to the gastric cardia.

A radiology report of a CT scan of the chest/abdomen/pelvis with oral and non-ionic intravenous contrast performed on 10/25/17 indicates a distal esophageal mass extending into the stomach with malignant appearing distal pair of esophageal adenopathy and adenopathy along the lesser curvature of the stomach.

A thoracic surgery clinical note from 11/02/17 states that the patient has had difficulty swallowing solids and feels that food is getting stuck, causing him to cough in addition to having a sore throat since June. The patient believed that the sore throat was initially related to his allergies. It is noted that the swallow study and CT scan of the chest/abdomen/pelvis were ordered by the primary care physician. A PET scan and an endoscopy were recommended.

A radiology report from a PET/CT of the skull base to the mid-thigh performed on 11/08/17 indicates a tumor in the distal esophagus consistent with malignancy, which is contiguous with a mass at the gastroesophageal junction that extends well into the stomach, and a large metastatic lymph node or conglomerate chain of lymph nodes in the distal aspect of the posterior mediastinum.

An operative report from 11/16/17 indicates that a flexible esophagogastroduodenoscopy with biopsy was performed, which revealed poorly differentiated adenocarcinoma.

A clinical progress note from 11/17/17 indicates that treatment with chemotherapy and radiation is recommended. A port was placed on 11/21/17 for the

Exhibit 4

chemotherapy.

An emergency room clinical note from 12/29/17 indicates that the patient presented with tachycardia with evidence of occasional atrial flutter on monitoring. This was treated with IV Cardizem, which brought the patient back into normal sinus rhythm, and outpatient follow-up was recommended. The patient returned to the emergency room with tachycardia on 01/02/18, and per the clinical note, was found to have supraventricular tachycardia (SVT) on electrocardiogram (EKG). The SVT was successfully converted back to normal sinus rhythm with adenosine. He was also found to be anemic during this encounter, which was attributed to chemotherapy.

**Questions for Review:**
1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

**Conclusion:**
1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

Based on the submitted policy definitions, the diagnoses have been divided into the following illnesses:

Esophageal/gastric Cancer
C15.5 Malignant neoplasm of lower third of esophagus 11/27/17, 11/30/17-12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17
C15.8 Malignant neoplasm of overlapping sites of esophagus 11/08/17
C15.9 Malignant neoplasm of esophagus, unspecified 11/24/17-12/18/17, 11/30/17, 12/05/17, 12/14/17, 2/26/17-12/29/17, 12/29/17
C16.0 Malignant neoplasm of cardia 11/16/17, 11/21/17
C16.9 Malignant neoplasm of stomach, unspecified 11/02/17, 11/17/17
K22.8 Other specified diseases of esophagus 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17
K22.9 Disease of esophagus, unspecified 11/16/17
T45.1X5A Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter 12/26/17-12/29/17
R11.0 Nausea 11/24/17-12/18/17
R11.2 Nausea with vomiting, unspecified 12/26/17-12/29/17
R12 Heartburn 11/30/17
R13.10 Dysphagia, unspecified 09/06/17, 10/12/17, 10/19/17, 10/24/17
D50.0 Iron deficiency anemia secondary to blood loss (chronic) 11/24/17-12/18/17, 11/30/17, 12/14/17
D50.9 Iron deficiency anemia, unspecified 09/06/17, 10/12/17, 11/01/17, 11/09/17
D64.9 Anemia, unspecified 11/01/17
Z51.0 Encounter for antineoplastic radiation therapy 11/30/17-12/29/17
Z51.11 Encounter for antineoplastic chemotherapy 11/24/17-12/18/17, 12/26/17-12/29/17
T82.868A Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter 12/26/17-12/29/17
Y82.8 Other medical devices associated with adverse incidents 12/26/17-12/29/17
Z45.2 Encounter for adjustment and management of vascular access device 11/21/17

Dyslipidemia
E78.5 Hyperlipidemia, unspecified 09/06/17, 10/12/17, 11/16/17

Hypertension
I10 Essential (primary) hypertension 01/02/18, 01/07/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17

Cardiac arrhythmia
I47.1 Supraventricular tachycardia 01/02/18, 01/07/18

I48.92 Unspecified atrial flutter 12/29/17

I49.9 Cardiac arrhythmia, unspecified 01/02/18

R00.0 Tachycardia, unspecified 01/02/18, 01/07/18, 12/26/17-12/29/17, 12/29/17

R07.9 Chest pain, unspecified 01/02/18, 12/29/17


Allergies

J30.2 Other seasonal allergic rhinitis 09/06/17, 10/12/17

L24.7 Irritant contact dermatitis due to plants, except food 09/06/17, 10/12/17, 11/01/17, 11/09/17


Benign prostatic hyperplasia

N40.0 Enlarged prostate without lower urinary tract symptoms 09/06/17, 10/12/17


The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:

Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17

Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17

Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17


Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:

Esophageal/gastric Cancer

Dyslipidemia

Hypertension

Allergies

Benign prostatic hyperplasia


Based on the plan provisions, the following listed diagnosis/condition(s) are considered not preexisting to the plan's effective date:

Cardiac arrhythmia


The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:

Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17

Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17

Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17


2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

No. Not all of the above diagnoses are due to the same or related causes and therefore deemed to be one illness.

Based on the provided documentation, with a reasonable degree of medical certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension, allergies and benign prostatic hyperplasia are pre-existing conditions, but the diagnosis of cardiac arrhythmia is not a pre-existing condition based on the medical advice, care, and treatment rendered in the 24 months preceding the effective date of the policy. A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and seasonal allergies. It goes on to state that the patient continues to complain of sore throat with difficulty swallowing, and a barium swallow test was ordered. This encounter from 09/06/17 precedes the effective policy date of 10/06/17.


**References Used in Support of Decision:**

Merck manual:

Esophageal cancer

http://www.merckmanuals.com/professional/gastrointestinal-disorders/tumors-of-the-gi-tract/esophageal-cancer

Merck manual:
Dyslipidemia
http://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/lipid-disorders/dyslipidemia

Merck manual:
overview of hypertension
http://www.merckmanuals.com/professional/cardiovascular-disorders/hypertension/overview-of-hypertension

Merck Manual
Seasonal Allergies
http://www.merckmanuals.com/professional/immunology-allergic-disorders/allergic,-autoimmune,-and-other-hypersensitivity-disorders/allergic-rhinitis

Merck manual:
Benign prostatic hyperplasia
http://www.merckmanuals.com/professional/genitourinary-disorders/benign-prostate-disease/benign-prostatic-hyperplasia-bph

Merck Manual
Cardiac Arrhythmia
http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/overview-of-arrhythmias

Merck manual:
Atrial flutter
http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/atrial-flutter

Merck Manual
Reentrant supraventricular tachycardias SVT
http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/reentrant-supraventricular-tachycardias-svt

---

**Reviewer Code:** 5158

The physician that provided this review is board certified by the American Board of Internal Medicine in General Internal Medicine. This reviewer is a member of the American College of Physicians and a member of the Society of Hospital Medicine. This reviewer has been in active practice since 2003.

**Conflict of Interest Statement:**

This reviewer hereby certifies that he/she:

- Declares, under penalty of perjury, that the information contained in this report and its attachments, if any, is true and correct to the best of his/her knowledge and belief, except as to information that he/she has indicated was received from others. As to that information, this report accurately describes the information provided to him/her.
- Does not accept compensation for review activities that is dependent in any way on the specific outcome of the case;
- To the best of his/her knowledge, was not involved with the specific episode of care prior to referral of the case for review;
- To the best of his/her knowledge, has not had any prior involvement in the denial/appeal process for the case, regardless of whether the involvement was on behalf of ▮▮▮ or any other peer review vendor;
- Has the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review; and
- Has current, relevant experience and/or knowledge to render a determination for the case under the review;
- Does not have a material, familial, or financial conflict of interest regarding the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care

service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure, or other therapy being recommended for the covered person whose treatment is the subject of the review;

- Was located in a state or territory of the United States when conducting this review

The written opinions conveyed herein represent the opinions of the physician reviewers and clinical advisors who reviewed the case. These case review opinions are provided pursuant to the recipient's request and in good faith, based on the medical records and information submitted to such reviewers for review, the published scientific medical literature, and other relevant information such as that available through federal agencies, institutes and professional associations. ███████████████████████████ assumes no liability for the opinions of its contracted physicians and/or clinician advisors unless █████ has expressly accepted the risk of any such liability through a written contract with the health plan, organization or other party authorizing this case review. The health plan, organization or other party has requested and authorized this case review and █████ and its contracted physicians and/or clinician advisors have provided this case review pursuant to that request and authorization. The health plan, organization or other party authorizing this case review agrees to hold █████ harmless for any and all claims which may arise as a result of this case review. Unless otherwise expressly agreed in writing, the health plan, organization or other third party requesting or authorizing this review is responsible for policy interpretation, the final determination made regarding coverage, actual provision of coverage where applicable and/or eligibility for this case, and providing written notice of its determination to the patient/enrollee or their authorized representative and/or their treating provider, which shall include any information required by state and/or federal regulations.

3192473.3
Case Analyst: Basil ext 6529

**List of Conditions**

ID#: 094472834
Claimant: TOM KOPP

Diagnosis/Condition(s):

| Code | Description | Date(s) of Service |
|---|---|---|
| C15.5 | Malignant neoplasm of lower third of esophagus | 01/03/18–01/16/18, 11/27/17, 11/30/17–12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17 |
| C15.8 | Malignant neoplasm of overlapping sites of esophagus | 11/08/17 |
| C15.9 | Malignant neoplasm of esophagus, unspecified | 02/06/18, 11/24/17–12/18/17, 11/30/17, 12/05/17, 12/14/17, 12/26/17–12/29/17, 12/29/17 |
| C16.0 | Malignant neoplasm of cardia | 11/16/17, 11/21/17 |
| C16.9 | Malignant neoplasm of stomach, unspecified | 11/02/17, 11/17/17 |
| D50.0 | Iron deficiency anemia secondary to blood loss (chronic) | 11/24/17–12/18/17, 11/30/17, 12/14/17 |
| D50.9 | Iron deficiency anemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| D64.9 | Anemia, unspecified | 11/01/17 |
| E78.5 | Hyperlipidemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17, 11/16/17 |
| I10 | Essential (primary) hypertension | 01/02/18, 01/07/18, 02/06/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17 |
| J30.2 | Other seasonal allergic rhinitis | 09/06/17, 10/12/17 |
| K22.8 | Other specified diseases of esophagus | 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17 |
| K22.9 | Disease of esophagus, unspecified | 11/16/17 |
| L24.7 | Irritant contact dermatitis due to plants, except food | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| N40.0 | Enlarged prostate without lower urinary tract symptoms | 09/06/17, 10/12/17 |
| R11.0 | Nausea | 11/24/17–12/18/17 |
| R11.2 | Nausea with vomiting, unspecified | 12/26/17–12/29/17 |
| R12 | Heartburn | 11/30/17 |
| R13.10 | Dysphagia, unspecified | 02/06/18, 09/06/17, 10/12/17, 10/19/17, 10/24/17, 11/01/17, 11/09/17 |
| T45.1X5A | Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter | 12/26/17–12/29/17 |
| T82.868A | Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter | 12/26/17–12/29/17 |
| Y82.8 | Other medical devices associated with adverse incidents | 12/26/17–12/29/17 |
| Z45.2 | Encounter for adjustment and management of vascular access device | 11/21/17 |
| Z51.0 | Encounter for antineoplastic radiation therapy | 01/03/18–01/16/18, 11/30/17–12/29/17 |
| Z51.11 | Encounter for antineoplastic chemotherapy | 11/24/17–12/18/17, 12/26/17–12/29/17 |

Resend12-04-18:02:56PM;

Apt. 10 AM (6)

**MEDI-HELP**
MH
IMMEDIATE AND MULTI-SPECIALTY
MEDICAL CARE

**FOLLOW UP PHYSICAL EXAM**

1691 Washington Road
Mt. Lebanon, PA 15228
Phone (412) 835-6900
Fax (412) 835-6933

| NAME Thomas Kopp | | AGE 64 | TIME 10:15 AM | DATE 9-6-17 | STAFF INITIALS 16 |

**NOTES**

R/c: B/P check, sore throat, swallowing.

Pt. presents for B/P check - Rx. refill lisinopril. Still has slight sore throat & dry non-productive cough. He is swallowing better & solid foods. - seson - allergies. OTC - Allegra
Chol ↑ 245, TGP 249
BPH - 40+ 1 - twice at night, PSA - 1.4

cm: Lisinopril 10mg T QD
- Seson Allergies

**VITAL SIGNS**

| | |
|---|---|
| TEMP | 97.7 |
| RESP | 97.2 |
| PULSE | 73 |  R 1 |
| B.P. | 132/72 |
| HT 5'7" | WT 144# |
| BMI | |

☑ review lab tests
☐ review med. tests
☐ review imaging tests
☐ review old records

**ROS** ☑ ALL OTHERS NEGAT

☐ history from other than patient
☐ PFSH dated _____ reviewed & confirmed by physician
Current smoker ☐ Yes ☑ No
Previous smoker ☐ Yes ☐ No

**ALLERGIES/ADV. REACT.** ☑ YES ☐ NO
1. PCN
2.
3.

**PHYSICAL EXAM**

| | | | Abnormal Findings |
|---|---|---|---|
| Gen. appearance | ☐ thin ☐ obese ☑ well-nourished ☑ well-groomed ☑ cooperative | ☐ | |
| Head | ☑ normocephalic ☑ ext. inspection ears/nose no lesions | ☐ | |
| Eyes | ☐ PEARL ☑ pupil size nml ☑ sclera & conjuct. WNL ☑ eyelids WNL | ☐ | |
| ENT | Ears | ☐ tymp. memb _ neg_ ☐ ext. aud. canal _ neg_ | ☐ | |
| | Nose | ☑ mucosa pink ☐_no_ congestion septum / turbinates | ☐ | |
| | Mouth | ☑ lips not cyanotic ☑ oral mucosa gum wet, tongue not coated | ☐ | |
| | Throat | ☐ pharynx _neg_ | ☐ | |
| Neck | ☐ sym. trach. midline ☐ Ø tender glands ☐ thyroid nml; ☐ Ø JVD | | |
| Respiratory | ☑ lungs vesicular breathing, equal BiL.; Ø wheezing ☐_rhonchi | ☐ | |
| Cardiovascular | ☑ heart RSR; _no_ murmurs _, ☐ gallops, or rubs, S1__S2__ nml | ☐ | |
| Abdomen/Gi | ☑ soft, NT/ND; Ø organomegaly, masses, or hernia | ☐ | |
| Musculoskeletal | ☑ normal inspection; ☐ no joint swelling; ☐ good joint ROM; ☐ no spasm; ☐ no tenderness ☐ gait normal | ☐ | |
| Extremities | ☐ Ø edema ☐_____ varicosities ☐_____ pedal pulses_ | ☐ | Rx. 1. Lisinopril 10mg T QD |
| Skin | ☑ normal color; warm, dry; Ø lesions or masses | ☐ | |
| Lymphatic system | ☐ Ø lymphadenopathy; at neck, axillae, groin, supraclavicular | ☐ | # 90 |
| Neuro | ☐ CN 2-12, sensory, motor, and cerebellum intact | ☐ | |
| Psych system | ☑ Alert, oriented X3 ☐ Ø depression ☐ Ø anxiety | ☐ | |
| | | ☐ | |
| | | ☐ | |

Imp. ① HTN

☒ EUG  Tasm          ② Hyper lipidaemia         Flu 3 wo.

                    ③ - BPH

x - u/a - ⊖          ④ Seson. Allergies

        Plan: fasting cbc, chem, lipids          #4

Exhibit 5



**AUDLEY LAW**

Audley Law Offices, P.C.
51 Clairton Blvd., Suite 100
Pittsburgh, PA 15236

voice (412) 532-0089
toll free 800-758-9720
fax (412) 532-0096
sean@audleylawoffices.com
www.audleylawoffices.com

December 20, 2018

Kylynn Williams, Specialist
Medical History Review
Golden Rule Insurance Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

*Via Facsimile Only (801) 478-7581*

Re:    **Your Insured:  Thomas Edward Kopp**
       **My Client:  Allegheny Health Network**
       **Subscriber ID:  094472834**
       **Subscriber SSN:  xxx-xx-2220**
       **Date of Birth:  02/16/1953**
       **Dates of Service:  11/30/17 to 12/29/17**
       **Account Balance:  $87,871.61**
       **Account/File #:  2000878615**

Dear Ms. Williams:

While I realize that you indicated in your November 7th letter that your legal department had reviewed this matter and concluded that denial would stand that, further, that your appeal process was "complete", I just received Mr. Kopp's records from Maley Thoracic which include the records of his visits to his primary care physician prior to the effective date of coverage. Since those records clearly demonstrate that Mr. Kopp did not receive or have recommended "...medical advice, diagnosis, care, or treatment" for the condition later determined to be esophageal cancer prior to October 6, 2017, I thought it best to provide you with copies to allow Golden Rule to reconsider its denial.

I also would point out that in the August 15, 2018 letter from Laura Foster at Golden Rule to Emily Zombek, the Administratrix of Mr. Kopp's Estate, the statement that "...Mr. Kopp saw his physician on September 6, 2017 complaining of an inability to swallow and it was suggested that he have an endoscopy done" is completely and utterly false. The records from MediHelp, Mr. Kopp's PCP, prove that there was no suggestion that Mr. Kopp undergo any additional treatment or undergo any testing related to his throat complaints. The report of the "independent" review from an unnamed physician conveniently conflates the September 6, 2017 visit with the recommendation for a barium swallow test. The report fails to note that the recommendation for the barium swallow test was only made on October 12, 2017 after Mr. Kopp returned with specific complaints of difficulty swallowing. Prior to that, Mr. Kopp had vague complaints of a sore throat

Exhibit 6

and other allergy related symptoms that his physician treated as such. The medical review also described Mr. Kopp as "....having dysphagia since June 2017." There is no support for that in any of the records. The false claim that a diagnostic test was recommended prior to the effective date of the coverage, the failure of the medical reviewer to note that the recommendation for the diagnostic test came *after* the effective date of the coverage and the unsupported contention that Mr. Kopp had dysphagia since June 2017 is pretty compelling proof that Golden Rule acted in bad faith in denying this claim based on a pre-existing condition clause.

Mr. Kopp saw his primary care physician twice before the effective date of the coverage and once after. He saw Dr. Nenad Janicijevic first on May 12, 2017 when he complained of a severe sore throat, dry throat and cough. He had no other symptoms. There is no mention in this record of any problems swallowing and there is no diagnosis of dysphagia. The doctor determined that he was suffering from seasonal allergies and took a throat culture. He prescribed a Zpack antibiotic as well as Flonase.

Mr. Kopp did not see a physician again until September 6, 2017. There is no record of him seeing anyone in June 2017. On September 6, he presented for a blood pressure check and a refill of Lisinopril. He also told the doctor that he still had a "slight sore throat and dry, non-productive cough." He also said that he "was swallowing better with solid foods." The doctor determined, again, that he was suffering from seasonal allergies and recommended over-the-counter Allegra. Of note, there was no diagnosis ore finding of dysphagia. There was, contrary to Golden Rule's false assertion otherwise, no recommendation for a barium swallow test of any other diagnostic test related to his throat. He was told to follow up in three weeks.

Mr. Kopp returned on October 12, 2017. He told the doctor that he was having problems swallowing solid foods and that the food was catching in his throat, causing him to cough. This was the first time that the treating physician noted this was an "abnormal finding." It was at this visit, after the effective date of the coverage, that a recommendation for a barium swallow test was made. As we know from the records, this test, on October 19th, revealed the presence of the malignant mass later confirmed to be esophageal cancer. I have enclosed the records from MediHelp.

Given the false statements made to the Estate and the absence of any medical records showing any treatment, diagnosis or recommendation for treatment for dysphagia prior to October 12, 2017, it is clear that the denial by Golden Rule was made in bad faith. Should this matter proceed to litigation, Golden Rule will find itself liable for not only the amount it is obligated to pay on the medical claims, but also for interests, costs, attorney fees and the punitive damages available pursuant to Pennsylvania's Bad Faith Insurance Practices Act, 42 Pa.C.S.A. §8371. I have been in regular communication with the attorney representing the Estate and the Estate will agree to bring claims alleging a violation of Section 8371 in an action seeking payment on these claims.

I am not sure what the payment amount would be under the terms of the policy, although it is certainly less than the $87,000.00 bill. Your choice is to process this claim for payment at the amount due under the terms of the policy or to continue to deny this claim in bad faith and expose Golden Rule to the substantial additional damages available under the Bad Faith Insurance Practices Act.

If you wish to discuss this matter, please contact me. It would probably make sense for a member of your legal department to contact me to discuss this matter in greater detail. If no resolution is reached by the first week of January, I will recommend to my client and the Estate that they file suit.

Thank you for your attention to this matter.

Sincerely,

Sean P. Audley, Esq.

SPA:plg
Enclosures
cc:     Tyler J. Jones, Esquire

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the original and one true and correct copy of the foregoing

Plaintiffs' First Request for Admission Directed to Defendant, Golden Rule Insurance Company,

was served by Certified US Mail, return receipt requested and regular US mail, postage prepaid,

on the ___20th___ day of ___MAY_____, 2019.

Golden Rule Insurance Company
7440 Woodland Drive
Indianapolis IN 46278-1719

Date: ___5/20/19_____

_____
Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

        Plaintiff,

   v.

GOLDEN RULE INSURANCE COMPANY,

        Defendant.

CIVIL DIVISION

No.  GD 19-007325

REQUESTS FOR ADMISSION

Filed on Behalf of Plaintiffs:

Emily Zombek, as Executrix of THE
ESTATE OF THOMAS KOPP,

and

Allegheny General Hospital

Counsel of Record for Plaintiffs:
Sean P. Audley, Esquire
Pa I.D. No.: 57568

Audley Law Offices, P.C.
51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

sean@audleylawoffices.com

RECEIVED
MAY 22 2019
Legal Regulatory

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of             CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL               No. GD 19-007325

       Plaintiff,

   v.

GOLDEN RULE INSURANCE COMPANY,

       Defendant.

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT, GOLDEN RULE INSURANCE COMPANY

### INSTRUCTIONS

If Golden Rule Insurance Company, Inc. (hereafter Defendant) fails to respond or object to any request within 30 days of the service of the Requests, the matter shall be deemed admitted pursuant to Pa. R. Civ. P. 4014 (B).

As is more fully set out in Rule 4014, the Defendant must admit or deny each request, and, where necessary, specify the parts of each request to which it objects or cannot in good faith admit or deny. If the Defendant objects to only part of a Request, it must admit or deny the remainder of the Request. In the event that the Defendant objects to or denies any Request or portion of a Request, the Defendant must state the reasons for its objection or denial.

Each Request solicits all information obtainable by Defendant from Defendant's attorneys, investigators, agents, employees and representatives. If you answer a Request on the

2

basis that you lack sufficient information to respond, describe any and all efforts you made to inform yourself of the facts and circumstances necessary to answer or respond.

<u>DEFINITIONS</u>

1.    The word "or" is used herein in its inclusive sense unless the context clearly requires otherwise.

2.    The term "document" means and includes without limitation all correspondence, memoranda, certificates, notes, books, manuals, pamphlets, brochures, advertisements, books of account, balance sheets, financial statements, profit and loss statements, working papers, schedules, diaries, calendars, logs, time records, equipment records, microfilms, transcripts, recordings, tapes, telexes, telegrams, files, proposals, bids, offers, contracts, agreements, change orders, worksheets, drawings, blue prints, designs, specifications, time cards, compilations, graphs, charts, bills, statements, invoices, receipts, bills of lading, shipping records, confirmations, applications, purchase orders, checks, checkbooks and other checking records, photographs, formulae, prescriptions, studies, projections, reports, computer programs, information contained in computer banks, tapes, cards, printouts and drafts to the extent they differ from the originals, and all other records and papers of any nature whatsoever.

3.    Any reference to a specifically named person, corporation or other entity and any reference generally to "person" shall include the employees, agents, representatives and other persons acting on behalf thereof or through whom the referenced person acts. The term "person" means and includes natural persons, corporations, partnerships, joint ventures, sole proprietorships, associations, trusts, estates, firms and any other entity.

4.    As used herein, "Defendant", shall be deemed to include Golden Rule Insurance Company, as well as their agents, attorneys, representatives or any other person acting on their

3

behalf or on behalf of any one of them.

    5.    As used herein, "you" refers to the Defendant, Golden Rule Insurance Company.

REQUEST FOR ADMISSION NO. 1.

Defendant issued a health insurance policy, numbered 094472834 and with an effective date of October 6, 2017 to Thomas Kopp, DOB 02/16/1953.

Admit_____           Deny_____

REQUEST FOR ADMISSION NO. 2.

Policy number 094472834 was effective between October 6, 2017 and January 4, 2018.

Admit_____           Deny_____

REQUEST FOR ADMISSION NO. 3.

Defendant received claims seeking payment from Defendant for medical care provided to Thomas Kopp between November 30, 2017 and December 29, 2017 at Allegheny General Hospital.

Admit_____           Deny_____

REQUEST FOR ADMISSION NO. 4.

Defendant received claims seeking payment from Defendant for medical care provided between October 12, 2017 and January 4, 2018 from medical providers other than Allegheny General Hospital.


Admit_____          Deny_____


REQUEST FOR ADMISSION NO. 5

Defendant mailed a letter dated February 20, 2018 to Mr. Kopp's home address which explained that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy.


Admit_____          Deny_____


REQUEST FOR ADMISSION NO. 6

Exhibit 1 attached hereto is a true and correct copy of the letter dated February 20, 2018 Defendant mailed to Mr. Kopp's home address advising that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy.


Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 7

Exhibit 2 attached hereto is a true and correct copy of the medical report dated February 19, 2018 that defendant enclosed with its February 20, 2018 letter advising Mr. Kopp that payment for the care he received in connection with his diagnosis of esophageal cancer would be denied based on the pre-existing condition exclusion clause in his health insurance policy?

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 8

Exhibit 3 attached hereto is a true and correct copy of the letter dated February 26, 2018 Defendant mailed to Mr. Kopp's home address advising of a typographical error in the medical report provided to Mr. Kopp with the February 20, 2018 letter.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 9.

Exhibit 4 attached hereto is a true and correct copy of the medical report dated February 26, 2018 Defendant mailed to Mr. Kopp's home address with the February 26, 2018 letter advising him of the typographical error in the February 19, 2018 medical report.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 10.

Both medical reports referenced above, marked as exhibits 2 and 4, state, at page 3, the

following:

> "Based on the provided documentation, with a reasonable degree of medical
> certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension,
> allergies and benign hyperplasia are pre-existing conditions, but the diagnosis of
> cardiac arrythmia is not a pre-existing condition. Based on the medical advice,
> care and treatment rendered in the 24 months preceding the effective date of the
> policy.  A clinical progress note from 09/06/17 indicates that the patient has a
> history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and
> seasonal allergies.  It goes on to state that that the patient continues to complain of
> sore throat with difficulty swallowing, and a barium swallow test was ordered.
> This encounter from 09/06/17 precedes the effective policy date of 10/06/17."

Admit_____                    Deny_____

REQUEST FOR ADMISSION NO. 10.

Exhibit 5 attached hereto is the progress note dated September 6, 2017 that is referenced

in the medical reports marked exhibits 2 and 4.

Admit_____                Deny_____

REQUEST FOR ADMISSION NO. 11.

The progress note dated September 6, 2017 that is marked exhibit 5 does not state that a barium swallow test was ordered.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 12.

The progress note dated September 6, 2017 that is marked exhibit 5 does not diagnose Mr. Kopp as suffering from dysphagia.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 13.

Mr. Kopp was not diagnosed with dysphagia until October 12, 2017?

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 14.

A barium swallow test was not ordered by any medical provider until October 12, 2017.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 15.

The diagnosis of dysphagia did not occur until after the effective date of the health insurance policy referenced above.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 16.

The barium swallow test was not ordered until after the effective date of the health insurance policy referenced above.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 17.

The medical reviewer was factually incorrect when he or she wrote in the February 19 and February 26, 2018 report that a barium swallow test was ordered on September 6, 2017.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 18.

Mr. Kopp was not diagnosed with esophageal cancer until November 16, 2017.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 19.

In a letter dated December 20, 2018, a copy of which is attached hereto and marked exhibit 6, Defendant was advised of the erroneous factual averment in the medical reviewer's report regarding the date that the barium swallow test was ordered.

Admit_____          Deny_____

REQUEST FOR ADMISSION NO. 20.

After Defendant was advised that the medical review reports contained the factual error regarding the date that the barium swallow test was ordered, Defendant did not seek another review of the medical record to determine if the esophageal cancer was a pre-existing condition.

Admit_____            Deny_____

REQUEST FOR ADMISSION NO. 21.

After Defendant was advised that the medical review reports contained the factual error regarding the date that the barium swallow test was ordered, Defendant continued to maintain that the claim was barred by the pre-existing condition clause?

Admit_____            Deny.

RESPECTFULLY SUBMITTED:

AUDLEY LAW OFFICES, P.C.

By: _____

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

**Golden Rule®**
A UnitedHealthcare Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

February 20, 2018

TOM KOPP
2345 KINGWOOD ST
PITTSBURGH, PA  15234-3147

Identification No.:  094472834
Insured:  Tom Kopp
Claimant:  Tom Kopp

Dear Mr. Kopp:

We have completed our review of your claims.

The effective date of your insurance is October 6, 2017.  Your plan terminated on January 4, 2018.  Preexisting conditions are not covered under your policy.

Your certificate defines a preexisting condition as a condition:

    (a) For which medical advice, diagnosis, care or treatment was recommended or received within the 24 months immediately preceding the date the covered person became insured under the policy; or

    (b) That had manifested itself in such a manner that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care or treatment within the 12 months immediately preceding the date the covered person became insured under the policy.

We received medical records from St. Clair Hospital, Dormont Vision Center and Mailey Thoracic Surgery.

We sent the medical records we received along with a copy of your plan definition to a medical professional for review.  We asked the medical professional if the treatment you received was due to a preexisting condition as defined by your plan.

The medical professional's opinion is that the treatment you received for the conditions listed in the enclosed chart is due to preexisting conditions as defined by your plan.  Therefore, no benefits would be payable for these conditions or any related conditions.

Exhibit  1

(800) 657-8205
www.goldenrule.com

Tom Kopp
Identification No.: 094472834
Page 2
February 20, 2018

The medical professional's opinion is that some of these conditions are due to the same or related causes and are therefore deemed to be one illness.

We have enclosed a copy of the medical professional's opinion for your review.

If you wish to appeal this decision, please submit your request to:

Grievance Administrator<br>
PO Box 31371<br>
Salt Lake City, UT  84131-0371

We have enclosed a copy of the Standard Grievance and Adverse Determination Procedures for your review.

We expressly reserve all of our contractual rights under the contract of insurance.

Sincerely,

*Kylynn Williams*

Kylynn Williams, Specialist
Medical History Review

Enclosure

February 19, 2018

KYLYNN L WILLIAMS
UNITED HEALTHCARE (MEDICAL REVIEWS)
GREEN BAY, WI 54307

CLAIMANT: KOPP, TOM
EMPLOYEE: KOPP, TOM
POLICY: 094472834
CLIENT TRACKING NUMBER:

**Records Received:**
Consulting physician's opinion 02/13/18
Plan language
Fax cover sheet
St Clair Hospital medical records 10/19/17-01/09/18
Dormont Vision Center medical records 04/15/16-04/15/16
Mailey Thoracic Surgery medical records 05/21/17-12/05/17
Additional records request letter 12/29/17

**Summary of Treatment/Case History:**
This is a 65-year-old male (date of birth 02/16/53) for whom the effective date of the policy is 10/06/17.

A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, seasonal allergies, and continues to complain of a sore throat with difficulty swallowing. A barium swallow test was ordered and performed on 10/19/17. The report from the swallow study indicates the patient was found to have a malignant mass of the distal esophagus extending to the gastric cardia.

A radiology report of a CT scan of the chest/abdomen/pelvis with oral and non-ionic intravenous contrast performed on 10/25/17 indicates a distal esophageal mass extending into the stomach with malignant appearing distal pair of esophageal adenopathy and adenopathy along the lesser curvature of the stomach.

A thoracic surgery clinical note from 11/02/17 states that the patient has had difficulty swallowing solids and feels that food is getting stuck, causing him to cough in addition to having a sore throat since June. The patient believed that the sore throat was initially related to his allergies. It is noted that the swallow study and CT scan of the chest/abdomen/pelvis were ordered by the primary care physician. A PET scan and an endoscopy were recommended.

A radiology report from a PET/CT of the skull base to the mid-thigh performed on 11/08/17 indicates a tumor in the distal esophagus consistent with malignancy, which is contiguous with a mass at the gastroesophageal junction that extends well into the stomach, and a large metastatic lymph node or conglomerate chain of lymph nodes in the distal aspect of the posterior mediastinum.

An operative report from 11/16/17 indicates that a flexible esophagogastroduodenoscopy with biopsy was performed, which revealed poorly differentiated adenocarcinoma.

A clinical progress note from 11/17/17 indicates that treatment with chemotherapy and radiation is recommended. A port was placed on 11/21/17 for the

Exhibit 2

chemotherapy.

An emergency room clinical note from 12/29/17 indicates that the patient presented with tachycardia with evidence of occasional atrial flutter on monitoring. This was treated with IV Cardizem, which brought the patient back into normal sinus rhythm, and outpatient follow-up was recommended. The patient returned to the emergency room with tachycardia on 01/02/18, and per the clinical note, was found to have supraventricular tachycardia (SVT) on electrocardiogram (EKG). The SVT was successfully converted back to normal sinus rhythm with adenosine. He was also found to be anemic during this encounter, which was attributed to chemotherapy.

**Questions for Review:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

**Conclusion:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

Based on the submitted policy definitions, the diagnoses have been divided into the following illnesses:

Esophageal/gastric Cancer
C15.5 Malignant neoplasm of lower third of esophagus 11/27/17, 11/30/17-12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17
C15.8 Malignant neoplasm of overlapping sites of esophagus 11/08/17
C15.9 Malignant neoplasm of esophagus, unspecified 11/24/17-12/18/17, 11/30/17, 12/05/17, 12/14/17, 2/26/17-12/29/17, 12/29/17
C16.0 Malignant neoplasm of cardia 11/16/17, 11/21/17
C16.9 Malignant neoplasm of stomach, unspecified 11/02/17, 11/17/17
K22.8 Other specified diseases of esophagus 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17
K22.9 Disease of esophagus, unspecified 11/16/17
T45.1X5A Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter 12/26/17-12/29/17
R11.0 Nausea 11/24/17-12/18/17
R11.2 Nausea with vomiting, unspecified 12/26/17-12/29/17
R12 Heartburn 11/30/17
R13.10 Dysphagia, unspecified 09/06/17, 10/12/17, 10/19/17, 10/24/17
D50.0 Iron deficiency anemia secondary to blood loss (chronic) 11/24/17-12/18/17, 11/30/17, 12/14/17
D50.9 Iron deficiency anemia, unspecified 09/06/17, 10/12/17, 11/01/17, 11/09/17
D64.9 Anemia, unspecified 11/01/17
Z51.0 Encounter for antineoplastic radiation therapy 11/30/17-12/29/17
Z51.11 Encounter for antineoplastic chemotherapy 11/24/17-12/18/17, 12/26/17-12/29/17
T82.868A Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter 12/26/17-12/29/17
Y82.8 Other medical devices associated with adverse incidents 12/26/17-12/29/17
Z45.2 Encounter for adjustment and management of vascular access device 11/21/17

Dyslipidemia
E78.5 Hyperlipidemia, unspecified 09/06/17, 10/12/17, 11/16/17

Hypertension
I10 Essential (primary) hypertension 01/02/18, 01/07/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17

Cardiac arrhythmia
I47.1 Supraventricular tachycardia 01/02/18, 01/07/18

I48.92 Unspecified atrial flutter 12/29/17
I49.9 Cardiac arrhythmia, unspecified 01/02/18
R00.0 Tachycardia, unspecified 01/02/18, 01/07/18, 12/26/17-12/29/17, 12/29/17
R07.9 Chest pain, unspecified 01/02/18, 12/29/17

Allergies
J30.2 Other seasonal allergic rhinitis 09/06/17, 10/12/17
L24.7 Irritant contact dermatitis due to plants, except food 09/06/17, 10/12/17, 11/01/17, 11/09/17

Benign prostatic hyperplasia
N40.0 Enlarged prostate without lower urinary tract symptoms 09/06/17, 10/12/17

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:
Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17
Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17
Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:
Esophageal/gastric Cancer
Dyslipidemia
Hypertension
Allergies
Benign prostatic hyperplasia

Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:
Cardiac arrhythmia

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:
Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17
Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17
Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

No. Not all of the above diagnoses are due to the same or related causes and therefore deemed to be one illness.

Based on the provided documentation, with a reasonable degree of medical certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension, allergies and benign prostatic hyperplasia are pre-existing conditions, but the diagnosis of cardiac arrhythmia is not a pre-existing condition based on the medical advice, care, and treatment rendered in the 24 months preceding the effective date of the policy. A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and seasonal allergies. It goes on to state that the patient continues to complain of sore throat with difficulty swallowing, and a barium swallow test was ordered. This encounter from 09/06/17 precedes the effective policy date of 10/06/17.

References Used in Support of Decision:
Merck manual:
Esophageal cancer
http://www.merckmanuals.com/professional/gastrointestinal-disorders/tumors-of-the-gi-tract/esophageal-cancer

**List of Conditions**

ID#: 094472834
Claimant: TOM KOPP

Diagnosis/Condition(s):

| Code | Description | Date(s) of Service |
|---|---|---|
| C15.5 | Malignant neoplasm of lower third of esophagus | 01/03/18–01/16/18, 11/27/17, 11/30/17–12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17 |
| C15.8 | Malignant neoplasm of overlapping sites of esophagus | 11/08/17 |
| C15.9 | Malignant neoplasm of esophagus, unspecified | 02/06/18, 11/24/17–12/18/17, 11/30/17, 12/05/17, 12/14/17, 12/26/17–12/29/17, 12/29/17 |
| C16.0 | Malignant neoplasm of cardia | 11/16/17, 11/21/17 |
| C16.9 | Malignant neoplasm of stomach, unspecified | 11/02/17, 11/17/17 |
| D50.0 | Iron deficiency anemia secondary to blood loss (chronic) | 11/24/17–12/18/17, 11/30/17, 12/14/17 |
| D50.9 | Iron deficiency anemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| D64.9 | Anemia, unspecified | 11/01/17 |
| E78.5 | Hyperlipidemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17, 11/16/17 |
| I10 | Essential (primary) hypertension | 01/02/18, 01/07/18, 02/06/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17 |
| I47.1 | Supraventricular tachycardia | 01/02/18, 01/07/18, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| I48.92 | Unspecified atrial flutter | 12/29/17 |
| I49.9 | Cardiac arrhythmia, unspecified | 01/02/18 |
| J30.2 | Other seasonal allergic rhinitis | 09/06/17, 10/12/17 |
| K22.8 | Other specified diseases of esophagus | 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17 |
| K22.9 | Disease of esophagus, unspecified | 11/16/17 |
| L24.7 | Irritant contact dermatitis due to plants, except food | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| N40.0 | Enlarged prostate without lower urinary tract symptoms | 09/06/17, 10/12/17 |
| R00.0 | Tachycardia, unspecified | 01/02/18, 01/07/18, 12/26/17–12/29/17, 12/29/17 |
| R07.9 | Chest pain, unspecified | 01/02/18, 12/29/17 |
| R11.0 | Nausea | 11/24/17–12/18/17 |
| R11.2 | Nausea with vomiting, unspecified | 12/26/17–12/29/17 |
| R12 | Heartburn | 11/30/17 |
| R13.10 | Dysphagia, unspecified | 02/06/18, 09/06/17, 10/12/17, 10/19/17, 10/24/17, 11/01/17, 11/09/17 |
| T45.1X5A | Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter | 12/26/17–12/29/17 |
| T82.868A | Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter | 12/26/17–12/29/17 |
| Y82.8 | Other medical devices associated with adverse incidents | 12/26/17–12/29/17 |
| Z45.2 | Encounter for adjustment and management of vascular access device | 11/21/17 |
| Z51.0 | Encounter for antineoplastic radiation therapy | 01/03/18–01/16/18, 11/30/17–12/29/17 |
| Z51.11 | Encounter for antineoplastic chemotherapy | 11/24/17–12/18/17, 12/26/17–12/29/17 |

Merck manual:

Dyslipidemia

http://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/lipid-disorders/dyslipidemia

Merck manual:

overview of hypertension

http://www.merckmanuals.com/professional/cardiovascular-disorders/hypertension/overview-of-hypertension

Merck Manual

Seasonal Allergies

http://www.merckmanuals.com/professional/immunology-allergic-disorders/allergic,-autoimmune,-and-other-hypersensitivity-disorders/allergic-rhinitis

Merck manual:

Benign prostatic hyperplasia

http://www.merckmanuals.com/professional/genitourinary-disorders/benign-prostate-disease/benign-prostatic-hyperplasia-bph

Merck Manual

Cardiac Arrhythmia

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/overview-of-arrhythmias

Merck manual:

Atrial flutter

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/atrial-flutter

Merck Manual

Reentrant supraventricular tachycardias SVT

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/reentrant-supraventricular-tachycardias-svt

---

**Reviewer Code:** 5158

The physician that provided this review is board certified by the American Board of Internal Medicine in General Internal Medicine. This reviewer is a member of the American College of Physicians and a member of the Society of Hospital Medicine. This reviewer has been in active practice since 2003.

**Conflict of Interest Statement:**

This reviewer hereby certifies that he/she:

- Declares, under penalty of perjury, that the information contained in this report and its attachments, if any, is true and correct to the best of his/her knowledge and belief, except as to information that he/she has indicated was received from others. As to that information, this report accurately describes the information provided to him/her.
- Does not accept compensation for review activities that is dependent in any way on the specific outcome of the case;
- To the best of his/her knowledge, was not involved with the specific episode of care prior to referral of the case for review;
- To the best of his/her knowledge, has not had any prior involvement in the denial/appeal process for the case, regardless of whether the involvement was on behalf of ███████ or any other peer review vendor;
- Has the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review; and
- Has current, relevant experience and/or knowledge to render a determination for the case under the review;
- Does not have a material, familial, or financial conflict of interest regarding the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care

service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure, or other therapy being
recommended for the covered person whose treatment is the subject of the review;

- Was located in a state or territory of the United States when conducting this review

The written opinions conveyed herein represent the opinions of the physician reviewers and clinical advisors who reviewed the case. These case review
opinions are provided pursuant to the recipient's request and in good faith, based on the medical records and information submitted to such reviewers for
review, the published scientific medical literature, and other relevant information such as that available through federal agencies, institutes and
professional associations. ████████████████████████████ assumes no liability for the opinions of its contracted physicians and/or
clinician advisors unless ██████ has expressly accepted the risk of any such liability through a written contract with the health plan, organization or other
party authorizing this case review. The health plan, organization or other party has requested and authorized this case review and ██████ and its
contracted physicians and/or clinician advisors have provided this case review pursuant to that request and authorization.  The health plan, organization or
other party authorizing this case review agrees to hold ██████ harmless for any and all claims which may arise as a result of this case review. Unless
otherwise expressly agreed in writing, the health plan, organization or other third party requesting or authorizing this review is responsible for policy
interpretation, the final determination made regarding coverage, actual provision of coverage where applicable and/or eligibility for this case, and
providing written notice of its determination to the patient/enrollee or their authorized representative and/or their treating provider, which shall include any
information required by state and/or federal regulations.

3192473.3
Case Analyst: Basil ext 6529

### STANDARD GRIEVANCE AND ADVERSE DETERMINATION PROCEDURES

The following procedures apply to any appeal of an adverse determination, or grievance, including requests regarding rescission action that you or your dependent may submit, unless the state in which you reside has state-specific grievance or appeal procedure requirements that are applicable. We reserve the right to revise or amend these procedures. The purpose of these procedures is to provide a way to settle disputes you may have with us concerning adverse determinations or grievances.

### DEFINITIONS:

**"Adverse determination"** means a recommendation by our Review Agent or a determination by us that a service or treatment is not medical necessary (as defined in your policy or certificate).

**"Grievance"** means any written complaint regarding a full or partial denial of a claim for benefits except for denials on the basis that the:

> A. Claim is a duplicate billing;
> B. Claim needs to be sent to the network for repricing; or
> C. Medicare Explanation of Benefits is needed in order to process the claim.

**A grievance includes complaints regarding rescission action. A grievance does not include an adverse determination.**

### REVIEWS REGARDING ADVERSE RECOMMENDATION MADE BY OUR REVIEW AGENT:

> A. A first-level review will be conducted by the Review Agent, but by a different medical practitioner. If your or your dependent's medical condition requires an expedited decision, the Review Agent will expedite the review.
>
> B. If the results of the review remain unsatisfactory to you, the Review Agent will select a different independent medical practitioner, who practices in a field of medicine appropriate to the adverse determination, to conduct a second-level review.

### REVIEWS REGARDING ADVERSE DETERMINATIONS MADE BY US:

> A. A first-level review will be conducted by an independent medical practitioner chosen by us.
>
> B. If the results of the above review remain unsatisfactory to you, we will select a different independent medical practitioner who practices in a field of medicine appropriate to the adverse determination, to conduct a second-level review.

### REVIEWS REGARDING A GRIEVANCE:

> A. A first-level grievance will be handled by the original reviewer or a designated representative of the area responsible for the grievance. For cases involving a rescission decision, a panel of individuals who were not involved in the original decision will review the grievance. Grievances involving a rescission decision will have one level of review.
>
> B. A second-level grievance will be handled by a person not involved in the original denial or first-level grievance.

**GoldenRule®**
A UnitedHealthcare Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

February 26, 2018


TOM KOPP
2345 KINGWOOD ST
PITTSBURGH, PA  15234-3147

Identification No.:  094472834
Insured:  Tom Kopp
Claimant:  Tom Kopp

Dear Mr. Kopp:

We sent you a letter dated February 20, 2018 regarding our preexisting conditions
determination.  This letter included a copy of the medical consultant opinion along with
a chart that listed the conditions that were determined to be preexisting.

Upon further review, we have determined that there was a typographical error on the
enclosed medical consultant opinion and the chart. The opinion indicated that the
condition of cardiac arrhythmia and other associated conditions were preexisting in
error.

We have enclosed a copy of the corrected medical consultant opinion along with an
updated chart listing the conditions determined to be preexisting as defined by your
plan.

We apologize for any inconvenience this may have caused.

Sincerely,

*Kylynn Williams*
Kylynn Williams, Specialist
Medical History Review


Enclosure

Exhibit 3

February 26, 2018

KYLYNN L WILLIAMS
UNITED HEALTHCARE (MEDICAL REVIEWS)
GREEN BAY, WI 54307

CLAIMANT: KOPP, TOM
EMPLOYEE: KOPP, TOM
POLICY: 094472834
CLIENT TRACKING NUMBER:

**Records Received:**
Consulting physician's opinion 02/13/18
Plan language
Fax cover sheet
St Clair Hospital medical records 10/19/17-01/09/18
Dormont Vision Center medical records 04/15/16-04/15/16
Mailey Thoracic Surgery medical records 05/21/17-12/05/17
Additional records request letter 12/29/17

**Summary of Treatment/Case History:**
This is a 65-year-old male (date of birth 02/16/53) for whom the effective date of the policy is 10/06/17.

A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, seasonal allergies, and continues to complain of a sore throat with difficulty swallowing. A barium swallow test was ordered and performed on 10/19/17. The report from the swallow study indicates the patient was found to have a malignant mass of the distal esophagus extending to the gastric cardia.

A radiology report of a CT scan of the chest/abdomen/pelvis with oral and non-ionic intravenous contrast performed on 10/25/17 indicates a distal esophageal mass extending into the stomach with malignant appearing distal pair of esophageal adenopathy and adenopathy along the lesser curvature of the stomach.

A thoracic surgery clinical note from 11/02/17 states that the patient has had difficulty swallowing solids and feels that food is getting stuck, causing him to cough in addition to having a sore throat since June. The patient believed that the sore throat was initially related to his allergies. It is noted that the swallow study and CT scan of the chest/abdomen/pelvis were ordered by the primary care physician. A PET scan and an endoscopy were recommended.

A radiology report from a PET/CT of the skull base to the mid-thigh performed on 11/08/17 indicates a tumor in the distal esophagus consistent with malignancy, which is contiguous with a mass at the gastroesophageal junction that extends well into the stomach, and a large metastatic lymph node or conglomerate chain of lymph nodes in the distal aspect of the posterior mediastinum.

An operative report from 11/16/17 indicates that a flexible esophagogastroduodenoscopy with biopsy was performed, which revealed poorly differentiated adenocarcinoma.

A clinical progress note from 11/17/17 indicates that treatment with chemotherapy and radiation is recommended. A port was placed on 11/21/17 for the

Exhibit 4

chemotherapy.     :

An emergency room clinical note from 12/29/17 indicates that the patient presented with tachycardia with evidence of occasional atrial flutter on monitoring. This was treated with IV Cardizem, which brought the patient back into normal sinus rhythm, and outpatient follow-up was recommended. The patient returned to the emergency room with tachycardia on 01/02/18, and per the clinical note, was found to have supraventricular tachycardia (SVT) on electrocardiogram (EKG). The SVT was successfully converted back to normal sinus rhythm with adenosine. He was also found to be anemic during this encounter, which was attributed to chemotherapy.

**Questions for Review:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

**Conclusion:**

1. According to the attached records and plan provision, are the above listed diagnosis/condition(s) preexisting to the plan's effective date?

Based on the submitted policy definitions, the diagnoses have been divided into the following illnesses:

Esophageal/gastric Cancer

C15.5 Malignant neoplasm of lower third of esophagus 11/27/17, 11/30/17-12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17

C15.8 Malignant neoplasm of overlapping sites of esophagus 11/08/17

C15.9 Malignant neoplasm of esophagus, unspecified 11/24/17-12/18/17, 11/30/17, 12/05/17, 12/14/17, 2/26/17-12/29/17, 12/29/17

C16.0 Malignant neoplasm of cardia 11/16/17, 11/21/17

C16.9 Malignant neoplasm of stomach, unspecified 11/02/17, 11/17/17

K22.8 Other specified diseases of esophagus 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17

K22.9 Disease of esophagus, unspecified 11/16/17

T45.1X5A Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter 12/26/17-12/29/17

R11.0 Nausea 11/24/17-12/18/17

R11.2 Nausea with vomiting, unspecified 12/26/17-12/29/17

R12 Heartburn 11/30/17

R13.10 Dysphagia, unspecified 09/06/17, 10/12/17, 10/19/17, 10/24/17

D50.0 Iron deficiency anemia secondary to blood loss (chronic) 11/24/17-12/18/17, 11/30/17, 12/14/17

D50.9 Iron deficiency anemia, unspecified 09/06/17, 10/12/17, 11/01/17, 11/09/17

D64.9 Anemia, unspecified 11/01/17

Z51.0 Encounter for antineoplastic radiation therapy 11/30/17-12/29/17

Z51.11 Encounter for antineoplastic chemotherapy 11/24/17-12/18/17, 12/26/17-12/29/17

T82.868A Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter 12/26/17-12/29/17

Y82.8 Other medical devices associated with adverse incidents 12/26/17-12/29/17

Z45.2 Encounter for adjustment and management of vascular access device 11/21/17

Dyslipidemia

E78.5 Hyperlipidemia, unspecified 09/06/17, 10/12/17, 11/16/17

Hypertension

I10 Essential (primary) hypertension 01/02/18, 01/07/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17

Cardiac arrhythmia

I47.1 Supraventricular tachycardia 01/02/18, 01/07/18

I48.92 Unspecified atrial flutter 12/29/17
I49.9 Cardiac arrhythmia, unspecified 01/02/18
R00.0 Tachycardia, unspecified 01/02/18, 01/07/18, 12/26/17-12/29/17, 12/29/17
R07.9 Chest pain, unspecified 01/02/18, 12/29/17

Allergies
J30.2 Other seasonal allergic rhinitis 09/06/17, 10/12/17
L24.7 Irritant contact dermatitis due to plants, except food 09/06/17, 10/12/17, 11/01/17, 11/09/17

Benign prostatic hyperplasia
N40.0 Enlarged prostate without lower urinary tract symptoms 09/06/17, 10/12/17

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:
Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17
Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17
Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

Based on the plan provisions, the following listed diagnosis/condition(s) are considered preexisting to the plan's effective date:
Esophageal/gastric Cancer
Dyslipidemia
Hypertension
Allergies
Benign prostatic hyperplasia

Based on the plan provisions, the following listed diagnosis/condition(s) are considered not preexisting to the plan's effective date:
Cardiac arrhythmia

The following Z codes represent reasons for encounter and historical information, which do not represent active management or treatment of the condition:
Z23 Encounter for immunization 09/06/17, 10/12/17, 11/01/17, 11/09/17
Z68.23 Body mass index (BMI) 23.0-23.9, adult 11/30/17
Z68.24 Body mass index (BMI) 24.0-24.9, adult 11/24/17, 12/14/17, 12/29/17

2. Are all of the above diagnoses due to the same or related causes and therefore deemed to be one illness?

No. Not all of the above diagnoses are due to the same or related causes and therefore deemed to be one illness.

Based on the provided documentation, with a reasonable degree of medical certainty, the diagnoses of esophageal/gastric cancer, dyslipidemia, hypertension, allergies and benign prostatic hyperplasia are pre-existing conditions, but the diagnosis of cardiac arrhythmia is not a pre-existing condition based on the medical advice, care, and treatment rendered in the 24 months preceding the effective date of the policy. A clinical progress note from 09/06/17 indicates that the patient has a history of hypertension, hyperlipidemia, benign prostatic hyperplasia, and seasonal allergies. It goes on to state that the patient continues to complain of sore throat with difficulty swallowing, and a barium swallow test was ordered. This encounter from 09/06/17 precedes the effective policy date of 10/06/17.

**References Used in Support of Decision:**
Merck manual:
Esophageal cancer
http://www.merckmanuals.com/professional/gastrointestinal-disorders/tumors-of-the-gi-tract/esophageal-cancer

Merck manual:

Dyslipidemia

http://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/lipid-disorders/dyslipidemia

Merck manual:

overview of hypertension

http://www.merckmanuals.com/professional/cardiovascular-disorders/hypertension/overview-of-hypertension

Merck Manual

Seasonal Allergies

http://www.merckmanuals.com/professional/immunology-allergic-disorders/allergic,-autoimmune,-and-other-hypersensitivity-disorders/allergic-rhinitis

Merck manual:

Benign prostatic hyperplasia

http://www.merckmanuals.com/professional/genitourinary-disorders/benign-prostate-disease/benign-prostatic-hyperplasia-bph

Merck Manual

Cardiac Arrhythmia

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/overview-of-arrhythmias

Merck manual:

Atrial flutter

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/atrial-flutter

Merck Manual

Reentrant supraventricular tachycardias SVT

http://www.merckmanuals.com/professional/cardiovascular-disorders/arrhythmias-and-conduction-disorders/reentrant-supraventricular-tachycardias-svt

---

**Reviewer Code: 5158**

The physician that provided this review is board certified by the American Board of Internal Medicine in General Internal Medicine. This reviewer is a member of the American College of Physicians and a member of the Society of Hospital Medicine. This reviewer has been in active practice since 2003.

**Conflict of Interest Statement:**

This reviewer hereby certifies that he/she:

- Declares, under penalty of perjury, that the information contained in this report and its attachments, if any, is true and correct to the best of his/her knowledge and belief, except as to information that he/she has indicated was received from others. As to that information, this report accurately describes the information provided to him/her.
- Does not accept compensation for review activities that is dependent in any way on the specific outcome of the case;
- To the best of his/her knowledge, was not involved with the specific episode of care prior to referral of the case for review;
- To the best of his/her knowledge, has not had any prior involvement in the denial/appeal process for the case, regardless of whether the involvement was on behalf of ▮▮▮▮▮ or any other peer review vendor;
- Has the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review; and
- Has current, relevant experience and/or knowledge to render a determination for the case under the review;
- Does not have a material, familial, or financial conflict of interest regarding the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care

service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure, or other therapy being recommended for the covered person whose treatment is the subject of the review;

- Was located in a state or territory of the United States when conducting this review

The written opinions conveyed herein represent the opinions of the physician reviewers and clinical advisors who reviewed the case. These case review opinions are provided pursuant to the recipient's request and in good faith, based on the medical records and information submitted to such reviewers for review, the published scientific medical literature, and other relevant information such as that available through federal agencies, institutes and professional associations. ████████████████████████ assumes no liability for the opinions of its contracted physicians and/or clinician advisors unless ████ has expressly accepted the risk of any such liability through a written contract with the health plan, organization or other party authorizing this case review. The health plan, organization or other party has requested and authorized this case review and ████ and its contracted physicians and/or clinician advisors have provided this case review pursuant to that request and authorization.  The health plan, organization or other party authorizing this case review agrees to hold ████ harmless for any and all claims which may arise as a result of this case review. Unless otherwise expressly agreed in writing, the health plan, organization or other third party requesting or authorizing this review is responsible for policy interpretation, the final determination made regarding coverage, actual provision of coverage where applicable and/or eligibility for this case, and providing written notice of its determination to the patient/enrollee or their authorized representative and/or their treating provider, which shall include any information required by state and/or federal regulations.

3192473.3

Case Analyst: Basil ext 6529

**List of Conditions**

ID#: 094472834
Claimant: TOM KOPP

Diagnosis/Condition(s):

| Code | Description | Date(s) of Service |
|---|---|---|
| C15.5 | Malignant neoplasm of lower third of esophagus | 01/03/18–01/16/18, 11/27/17, 11/30/17–12/29/17, 12/05/17, 12/11/17, 12/12/17, 12/13/17, 12/14/17, 12/15/17, 12/18/17, 12/19/17, 12/20/17, 12/21/17, 12/22/17, 12/26/17, 12/27/17, 12/28/17 |
| C15.8 | Malignant neoplasm of overlapping sites of esophagus | 11/08/17 |
| C15.9 | Malignant neoplasm of esophagus, unspecified | 02/06/18, 11/24/17–12/18/17, 11/30/17, 12/05/17, 12/14/17, 12/26/17–12/29/17, 12/29/17 |
| C16.0 | Malignant neoplasm of cardia | 11/16/17, 11/21/17 |
| C16.9 | Malignant neoplasm of stomach, unspecified | 11/02/17, 11/17/17 |
| D50.0 | Iron deficiency anemia secondary to blood loss (chronic) | 11/24/17–12/18/17, 11/30/17, 12/14/17 |
| D50.9 | Iron deficiency anemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| D64.9 | Anemia, unspecified | 11/01/17 |
| E78.5 | Hyperlipidemia, unspecified | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17, 11/16/17 |
| I10 | Essential (primary) hypertension | 01/02/18, 01/07/18, 02/06/18, 09/06/17, 10/12/17, 11/16/17, 11/21/17, 12/29/17 |
| J30.2 | Other seasonal allergic rhinitis | 09/06/17, 10/12/17 |
| K22.8 | Other specified diseases of esophagus | 09/06/17, 10/12/17, 10/24/17, 10/25/17, 11/01/17, 11/08/17, 11/09/17, 11/16/17, 11/17/17, 11/21/17, 12/05/17 |
| K22.9 | Disease of esophagus, unspecified | 11/16/17 |
| L24.7 | Irritant contact dermatitis due to plants, except food | 09/06/17, 10/12/17, 10/24/17, 11/01/17, 11/09/17 |
| N40.0 | Enlarged prostate without lower urinary tract symptoms | 09/06/17, 10/12/17 |
| R11.0 | Nausea | 11/24/17–12/18/17 |
| R11.2 | Nausea with vomiting, unspecified | 12/26/17–12/29/17 |
| R12 | Heartburn | 11/30/17 |
| R13.10 | Dysphagia, unspecified | 02/06/18, 09/06/17, 10/12/17, 10/19/17, 10/24/17, 11/01/17, 11/09/17 |
| T45.1X5A | Adverse effect of antineoplastic and immunosuppressive drugs, initial encounter | 12/26/17–12/29/17 |
| T82.868A | Thrombosis of vascular prosthetic devices, implants and grafts, initial encounter | 12/26/17–12/29/17 |
| Y82.8 | Other medical devices associated with adverse incidents | 12/26/17–12/29/17 |
| Z45.2 | Encounter for adjustment and management of vascular access device | 11/21/17 |
| Z51.0 | Encounter for antineoplastic radiation therapy | 01/03/18–01/16/18, 11/30/17–12/29/17 |
| Z51.11 | Encounter for antineoplastic chemotherapy | 11/24/17–12/18/17, 12/26/17–12/29/17 |

Resend12-04-18 02:58PM;                                                          # 12/ 63

11/01/2017  14:54   41203   33          MEDIHELP                          PAGE  03/21

Apt. 10AM ⑥

**MEDI-HELP**
**MHⓇ**
IMMEDIATE AND MULTI-SPECIALTY
MEDICAL CARE

| FOLLOW UP PHYSICAL EXAM |
| --- |

1691 Washington Road
Mt. Lebanon, PA 15228
Phone (412) 835-6900
Fax (412) 835-6933

**NAME** Thomas Kodd   **AGE** 61   **TIME** 10 15AM   **DATE** 9-6-17   **STAFF INITIALS** 16

R/c: B/P check, sore Throat, swallowing.

Pt. presents for B/p check - Rx refill lisinopril. Still has slight sore throat c̄ dry non-productive cough. He is swallowing better c̄ solid foods. - seson- allergies. OTC - Allegra
cholA 245, TGP 299
BPA = goes 1-2 time at night, PSA = 1-4

cm: Lisinopril 10mg ī QD
— seson. Allergies

**VITAL SIGNS**

| | |
| --- | --- |
| TEMP | 97.7 |
| RESP | 97% |
| PULSE | 73   R 1 |
| B.P. | 132/72 |
| HT | 5'7"   WT 144# |
| BMI | |

☑ review lab tests
☐ review med. tests
☐ review imaging tests
☐ review old records

**ROS**  ☑ ALL OTHERS NEGAT
☐ history from other than patient
☐ PFSH dated _____ reviewed & confirmed by physician
Current smoker ☐Yes ☐No
Previous smoker ☐Yes ☐No

**ALLERGIES/ADV. REACT.** ☑YES ☐NO
1. PCN
2.
3.

**PHYSICAL EXAM**

| | | | ☑nml | Abnormal Findings |
| --- | --- | --- | --- | --- |
| Gen. appearance | ☐thin ☐obese ☑well-nourished ☑well-groomed ☑cooperative | | ☐ | |
| Head | ☑normocephalic ☑ext. inspection ears/nose no lesions | | ☐ | |
| Eyes | ☐PEARL ☑pupil size nml ☑sclera & conjuct. WNL ☑eyelids WNL | | ☐ | |
| E N T | Ears | ☐tymp. memb. neg ☑ext. aud. canal neg | ☐ | |
| | Nose | ☑mucosa pink ☐ no congestion septum/turbinates | ☐ | |
| | Mouth | ☑lips not cyanotic ☑oral mucosa/gum wet, tongue not coated | ☐ | |
| | Throat | ☐pharynx neg | ☐ | |
| Neck | ☑sym. trach. midline ☐Ø tender g ands ☐thyroid nml; ☐Ø JVD | | ☐ | |
| Respiratory | ☑lungs: vesicular breathing, equal B/L; Ø wheezing ☐___ rhonchi | | ☐ | |
| Cardiovascular | ☑heart: RSR; no murmurs___, ☐gallops, or rubs, S1__S2__ nml | | ☐ | |
| Abdomen/GI | ☐soft, NT/ND; Ø organomegaly, masses, or hernia | | ☐ | |
| Musculoskeletal | ☑normal inspection: ☐no joint swelling; ☐good joint ROM: ☐no spasm; ☐no tenderness ☐gait normal | | ☐ | |
| Extremities | ☐Ø edema _____ varicosities ___ ☐pedal pulses ___ | | | Rx).1. Lisinopril 10mg ī QD |
| Skin | ☑normal color; warm, dry, Ølesions or masses | | ☐ | |
| Lymphatic system | ☐Ø lymphadenopathy; at neck, axillae, groin, supraclavicular | | ☐ | ± 90 |
| Neuro | ☐CN 2-12, sensory, motor, and cerebellum intact | | ☐ | |
| Psych system | ☑Alert, oriented X3 ☐Ø depression; ☐Ø anxiety | | ☐ | |
| | | | ☐ | |
| | | | ☐ | |

※EUG    lasn

Imp. ① HTN                              Flu 3 wo.
      ② hyper lip. doe ice
      ③ BPH
      ④ seson. Allergies

x-4/p ⊝

Plan: fasting cbc, chem, lipids              +Y

Medi-Help

Exhibit 5



**AUDLEY LAW**

Audley Law Offices, P.C.
51 Clairton Blvd., Suite 100
Pittsburgh, PA 15236

voice (412) 532-0089
toll free 800-758-9720
fax (412) 532-0096
sean@audleylawoffices.com
www.audleylawoffices.com

December 20, 2018

Kylynn Williams, Specialist
Medical History Review
Golden Rule Insurance Company
P.O. Box 31374
Salt Lake City, UT  84131-0374

*Via Facsimile Only (801) 478-7581*

> **Re:**   **Your Insured:  Thomas Edward Kopp**
> **My Client:  Allegheny Health Network**
> **Subscriber ID:  094472834**
> **Subscriber SSN:  xxx-xx-2220**
> **Date of Birth:  02/16/1953**
> **Dates of Service:  11/30/17 to 12/29/17**
> **Account Balance:  $87,871.61**
> **Account/File #:  2000878615**

Dear Ms. Williams:

　　While I realize that you indicated in your November 7th letter that your legal department had reviewed this matter and concluded that denial would stand that, further, that your appeal process was "complete", I just received Mr. Kopp's records from Maley Thoracic which include the records of his visits prior to his primary care physician prior to the effective date of coverage. Since those records clearly demonstrate that Mr. Kopp did not receive or have recommended "...medical advice, diagnosis, care, or treatment" for the condition later determined to be esophageal cancer prior to October 6, 2017, I thought it best to provide you with copies to allow Golden Rule to reconsider its denial.

　　I also would point out that in the August 15, 2018 letter from Laura Foster at Golden Rule to Emily Zombek, the Administratrix of Mr. Kopp's Estate, the statement that "...Mr. Kopp saw his physician on September 6, 2017 complaining of an inability to swallow and it was suggested that he have an endoscopy done" is completely and utterly false.  The records from MediHelp, Mr. Kopp's PCP, prove that there was no suggestion that Mr. Kopp undergo any additional treatment or undergo any testing related to his throat complaints.  The report of the "independent" review from an unnamed physician conveniently conflates the September 6, 2017 visit with the recommendation for a barium swallow test.  The report fails to note that the recommendation for the barium swallow test was only made on October 12, 2017 after Mr. Kopp returned with specific complaints of difficulty swallowing. Prior to that, Mr. Kopp had vague complaints of a sore throat

Exhibit 6

and other allergy related symptoms that his physician treated as such. The medical review also described Mr. Kopp as "….having dysphagia since June 2017." There is no support for that in any of the records. The false claim that a diagnostic test was recommended prior to the effective date of the coverage, the failure of the medical reviewer to note that the recommendation for the diagnostic test came *after* the effective date of the coverage and the unsupported contention that Mr. Kopp had dysphagia since June 2017 is pretty compelling proof that Golden Rule acted in bad faith in denying this claim based on a pre-existing condition clause.

Mr. Kopp saw his primary care physician twice before the effective date of the coverage and once after. He saw Dr. Nenad Janicijevic first on May 12, 2017 when he complained of a severe sore throat, dry throat and cough. He had no other symptoms. There is no mention in this record of any problems swallowing and there is no diagnosis of dysphagia. The doctor determined that he was suffering from seasonal allergies and took a throat culture. He prescribed a Zpack antibiotic as well as Flonase.

Mr. Kopp did not see a physician again until September 6, 2017. There is no record of him seeing anyone in June 2017.  On September 6, he presented for a blood pressure check and a refill of Lisinopril.  He also told the doctor that he still had a "slight sore throat and dry, non-productive cough." He also said that he "was swallowing better with solid foods." The doctor determined, again, that he was suffering from seasonal allergies and recommended over-the-counter Allegra. Of note, there was no diagnosis ore finding of dysphagia. There was, contrary to Golden Rule's false assertion otherwise, no recommendation for a barium swallow test of any other diagnostic test related to his throat.  He was told to follow up in three weeks.

Mr. Kopp returned on October 12, 2017.  He told the doctor that he was having problems swallowing solid foods and that the food was catching in his throat, causing him to cough. This was the first time that the treating physician noted this was an "abnormal finding." It was at this visit, after the effective date of the coverage, that a recommendation for a barium swallow test was made.  As we know from the records, this test, on October 19th, revealed the presence of the malignant mass later confirmed to be esophageal cancer.  I have enclosed the records from MediHelp.

Given the false statements made to the Estate and the absence of any medical records showing any treatment, diagnosis or recommendation for treatment for dysphagia prior to October 12, 2017, it is clear that the denial by Golden Rule was made in bad faith.  Should this matter proceed to litigation, Golden Rule will find itself liable for not only the amount it is obligated to pay on the medical claims, but also for interests, costs, attorney fees and the punitive damages available pursuant to Pennsylvania's Bad Faith Insurance Practices Act, 42 Pa.C.S.A. §8371. I have been in regular communication with the attorney representing the Estate and the Estate will agree to bring claims alleging a violation of Section 8371 in an action seeking payment on these claims.

I am not sure what the payment amount would be under the terms of the policy, although it is certainly less than the $87,000.00 bill. Your choice is to process this claim for payment at the amount due under the terms of the policy or to continue to deny this claim in bad faith and expose Golden Rule to the substantial additional damages available under the Bad Faith Insurance Practices Act.

If you wish to discuss this matter, please contact me. It would probably make sense for a member of your legal department to contact me to discuss this matter in greater detail. If no resolution is reached by the first week of January, I will recommend to my client and the Estate that they file suit.

Thank you for your attention to this matter.

Sincerely,

Sean P. Audley, Esq.

SPA:plg
Enclosures
cc:     Tyler J. Jones, Esquire

## CERTIFICATE OF SERVICE

The undersigned certifies that the original and one true and correct copy of the foregoing

Plaintiffs' First Request for Admission Directed to Defendant, Golden Rule Insurance Company,

was served by Certified US Mail, return receipt requested and regular US mail, postage prepaid,

on the _____20th_____ day of _____MAY_____, 2019.

Golden Rule Insurance Company
7440 Woodland Drive
Indianapolis IN 46278-1719

Date: ___5/20/19___

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of               CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL                 No.  GD 19-007325

       Plaintiff,

   v.                                   PLAINITFF'S FIRST REQUEST FOR
                                            PRODUCTION OF DOCUMENTS

GOLDEN RULE INSURANCE COMPANY,

       Defendant.

                          Filed on Behalf of Plaintiffs:

                          Emily Zombek, as Executrix of THE
                          ESTATE OF THOMAS KOPP,

                          and

                          Allegheny General Hospital

                          Counsel of Record for Plaintiffs:
                          Sean P. Audley, Esquire
                          Pa I.D. No.: 57568

                          Audley Law Offices, P.C.
                          51 Clairton Boulevard, Suite 100
                          Pittsburgh, PA 15236

                          412-532-0089

                          sean@audleylawoffices.com

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of       CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL     No. GD 19-007325

       Plaintiff,

  v.

GOLDEN RULE INSURANCE COMPANY,

       Defendant.


**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

**TO:**    Golden Rule Insurance Company
     7440 Woodland Drive
     Indianapolis IN 46278-1719


<u>INSTRUCTIONS</u>

    Pursuant to Pennsylvania Rules of Civil Procedure 4009 and 3117, you are hereby requested to produce below the listed documents and/or items. This material will be examined and/or photocopied. The document/tangible things are to be produced at the **Audley Law Offices, P.C., 51 Clairton Boulevard, Suite 100, Pittsburgh, PA 15236** not more than thirty (30) days from receipt thereof.

    These requests are not directed merely to the person or party whose name appears above but are meant to include that person's or party's agents, servant, insurers, employers, employees, investigators, attorney, and other similarly situated to the person named.

    In addition, although the request seeks these documents within the next thirty (30) days, the request should also be deemed continuing, in that if there are further materials which come under the purview of any of these requests which are obtained after the time of their production presently, the materials should also be furnished in accordance with this request.

The items to be produced for inspection and photocopying are:

1. The policy issued to Thomas Kopp effective October 6. 2017 through January 4, 2018.

2. The application for insurance and any other documents used or considered by the Defendant in its decision to issue the policy referenced above.

3. The entire claims file for all medical claims submitted for payment by or on behalf of Thomas Kopp.

4. The underwriters file for the policy referenced above.

5. Any claims manual, claims policy or claims procedural manuals.

6. Any communications between and among employees of the defendant regarding the medical claim at issue in this action.

7. Any log notes regarding the claim or the policy issued to Mr. Kopp.

8. All documents relating to any denials of coverage based on a pre-existing condition clause the same or similar to the pre-existing condition clause relied upon in this matter that occurred within the last 36 months.

9. Any Reinsurance Agreement that may have applied to the claims submitted on behalf.

10. Any complaints filed in any court, arbitration, mediation, etc., alleging bad faith in the issuance of a denial of medical claims in reliance on a pre-existing condition exclusion clause.

.

RESPECTFULLY SUBMITTED:

AUDLEY LAW OFFICES, P.C.

By: _____

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the original and one true and correct copy of the foregoing

Plaintiffs' First Request for Production of Documents directed to defendant, Golden Rule

Insurance Company, was served by Certified US Mail, return receipt requested and regular US

mail, postage prepaid, on the _____ day of _____, 2019.

Golden Rule Insurance Company
7440 Woodland Drive
Indianapolis IN 46278-1719

Date: _____

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL

       Plaintiff,

v.

GOLDEN RULE INSURANCE COMPANY,

       Defendant.

CIVIL DIVISION

No.  GD 19-007325

PLAINITFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS

Filed on Behalf of Plaintiffs:

Emily Zombek, as Executrix of THE
ESTATE OF THOMAS KOPP,

and

Allegheny General Hospital

Counsel of Record for Plaintiffs:
Sean P. Audley, Esquire
Pa I.D. No.: 57568

Audley Law Offices, P.C.
51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

sean@audleylawoffices.com

RECEIVED
MAY 22 2019
Legal Regulatory

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

EMILY ZOMBEK as Executrix of       CIVIL DIVISION
THE ESTATE OF THOMAS KOPP, and
ALLEGHENY GENERAL HOSPITAL       No. GD 19-007325

         Plaintiff,

   v.

GOLDEN RULE INSURANCE COMPANY,

         Defendant.


### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**TO:**     Golden Rule Insurance Company
       7440 Woodland Drive
       Indianapolis IN 46278-1719


<u>INSTRUCTIONS</u>

Pursuant to Pennsylvania Rules of Civil Procedure 4009 and 3117, you are hereby requested to produce below the listed documents and/or items. This material will be examined and/or photocopied. The document/tangible things are to be produced at the **Audley Law Offices, P.C., 51 Clairton Boulevard, Suite 100, Pittsburgh, PA 15236** not more than thirty (30) days from receipt thereof.

These requests are not directed merely to the person or party whose name appears above but are meant to include that person's or party's agents, servant, insurers, employers, employees, investigators, attorney, and other similarly situated to the person named.

In addition, although the request seeks these documents within the next thirty (30) days, the request should also be deemed continuing, in that if there are further materials which come under the purview of any of these requests which are obtained after the time of their production presently, the materials should also be furnished in accordance with this request.

The items to be produced for inspection and photocopying are:

1. The policy issued to Thomas Kopp effective October 6. 2017 through January 4, 2018.

2. The application for insurance and any other documents used or considered by the Defendant in its decision to issue the policy referenced above.

3. The entire claims file for all medical claims submitted for payment by or on behalf of Thomas Kopp.

4. The underwriters file for the policy referenced above.

5. Any claims manual, claims policy or claims procedural manuals.

6. Any communications between and among employees of the defendant regarding the medical claim at issue in this action.

7. Any log notes regarding the claim or the policy issued to Mr. Kopp.

8. All documents relating to any denials of coverage based on a pre-existing condition clause the same or similar to the pre-existing condition clause relied upon in this matter that occurred within the last 36 months.

9. Any Reinsurance Agreement that may have applied to the claims submitted on behalf.

10. Any complaints filed in any court, arbitration, mediation, etc., alleging bad faith in the issuance of a denial of medical claims in reliance on a pre-existing condition exclusion clause.

.

RESPECTFULLY SUBMITTED:

AUDLEY LAW OFFICES, P.C.

By:

Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the original and one true and correct copy of the foregoing

Plaintiffs' First Request for Production of Documents directed to defendant, Golden Rule

Insurance Company, was served by Certified US Mail, return receipt requested and regular US

mail, postage prepaid, on the _20th_ day of _May_ , 2019.

Golden Rule Insurance Company
7440 Woodland Drive
Indianapolis IN 46278-1719

Date:_5/21/16_

_____
Sean P. Audley, Esquire
Attorney for Plaintiffs

51 Clairton Boulevard, Suite 100
Pittsburgh, PA 15236

412-532-0089